## CROOKER *vs.* BRAGG.

Where the water of a river is divided by an island, so that only *one fourth* of the stream descends on one side of the island, and the residue on the other, the owner of the shore where the largest quantity of water flows, is entitled to the use of the *whole water* flowing there; and the owner of the other shore has no right to place obstructions at the head of the island to cause one half of the stream to descend on his side of the river.

Nor can the owner of the shore where the smallest quantity flows, require the other in the use of the water for hydraulic purposes, to keep up a tight and secure dam; if such other can avail himself of the natural advantages afforded by his site, without any dam, or by an imperfect dam, he is at liberty to do so.

A *stream of water* cannot be diverted from its *natural course* without the consent of the owner over or by whose land it passes; although such owner may not require the whole or any part of it for the use of machinery.

ERROR from the Delaware common pleas. Crooker sued Bragg for taking away a dam erected by Crooker in the Susquehannah river, for the purpose of turning a portion of the stream towards his mills. The plaintiff's mills are on the *east* side of the river, and the defendant has mills on the *west* side; about 100 rods above the *dams* of the respective parties, which are nearly opposite to each other, the river is divided into two branches by an island which extends below the dams; *three fourths* of the water running in the *west* branch, and about *one fourth* in the *east* branch. The dams of the respective parties on each side of the river extend to the island. In 1827, the plaintiff put up a dam across the *west* branch at the head of the island, which raised the water about six inches, and diverted so much of it into the *east* branch that the defendant's mills were stopped for want of water. The defendant tore away the dam, and the plaintiff brought his action. The plaintiff claimed a *prescriptive right* to place obstructions at the head of the island at *all times of low water*, for the purpose of diverting a portion of the water into the *east* branch, and attempted to establish by proof, that the owners of the mills now belonging to him had claimed and exercised such right since the year 1800, and many witnesses were examined on both sides as to the exercise of such right. It appeared that

there had been dams at various times, but the dam built and torn down in 1827, raised the water higher than any dam previously built. The plaintiff proved that his own dam was tight and in good order, and offered to prove that the defendant's dam was leaky and wasted a great part of the water which ran into it; and that at all times sufficient water ran into it, which if prudently used, was enough to carry the defendant's mills: which evidence was objected to by the defendant, and excluded by the the court; to which decision the plaintiff excepted. The plaintiff further offered to prove that the dam erected by him turned no more water to his mills than was necessary to carry the same; which evidence also was objected to and overruled, and an exception taken. The plaintiff also offered to prove that the dam in question did not turn to his mills one half of the water of the river; and that he and those to whose rights he had succeeded never had one half, the quantity coming to the mills now owned by the plaintiff not exceeding three-eighths of the water flowing in the Susquehannah; which evidence was also objected to, rejected and an exception taken. The plaintiff proved that in 1807, while one *Sampson Crooker* was the owner of the mills on the *west* side of the river, one *Silas Bennett,* who was then the owner of the mills on the *east* side of the river, notified one *Gordon,* in the presence of *Sampson Crooker,* that he required him in pursuance of an agreement between them, (Bennett and Crooker,) to assist him in erecting a dam in the *west branch* at the head of the island, for the purpose of turning the water into the *east* branch, *Bennett* claiming at the time that he had *a right to erect such dam.* It seems that the witness must have added that Crooker, though present and must have heard what was said, was silent and did not deny the right asserted by Bennett. To rebut the inference arising from such silence, the defendant, on the cross examination of the witness, proved that after the conversation between Bennett and Gordon, and after the witness and Crooker had gone to the house of Crooker, the latter said that he did not know whether Bennett and Gordon had the right to erect such dam or not, that he presumed they had not, and if not, he would take hold of them; neither Bennett or Gordon were

present when these observations were made by Crooker; this evidence of the declarations of Crooker was received by the court, though objected to by the plaintiff, who excepted to the decision of the court. The court charged the jury that no one has the right to turn the water of a river out of its natural course unless he has a prescriptive right; that if they should find that the plaintiff or those under whom he claimed had kept up a dam for twenty years, he had a right to continue it, and was entitled to a verdict; that however, it had not been proved that any dam erected previous to 1827, had raised the water as high as the dam of that year had done. The counsel for the plaintiff requested the court to instruct the jury on the question whether the defendant had the right to tear the dam down lower than to reduce it to its original height, if the jury should find that the plaintiff had a prescriptive right to maintain any dam whatever in the *west* branch at the head of the island. The court said that they thought that the defendant had the right to tear down the whole dam, but subsequently said they would submit that question to the jury without the expression of any opinion upon it. To which charge there was no exception. The jury found for the defendant, and the plaintiff sued out a writ of error.

*S. Sherwood,* for the plaintiff in error. The plaintiff owning the east shore of the river, was entitled to the use of the one half of the water flowing in the river, and whether he owned the land or not where he erected his dam for the purpose of obtaining the one half of the water, the defendant could not complain of such erection, provided that the remaining half of the water was permitted to flow to his dam. In support of this position, he cited 17 *Mass. R.* 289, and *Angel on Water Courses, ch.* 1. If this position be correct, then the evidence offered by the plaintiff ought to have been received, viz. that he and those to whose rights he had succeeded never had the use of one half of the water of the river, and in fact never had more than three-eighths of the water, and that sufficient water at all times run into the dam of the defendant, prudently used, to supply his mills. The plaintiff fully supported his prescriptive right to place obstructions in the river at all times of *low*

*water*, to enable him to obtain a moiety of the water; it was not necessary that he should shew a dam constantly kept up; it was only when the water was low that he required a dam, and shewing that at such times a dam was kept up during 20 years, he established his right. The right to maintain the dam in this case was claimed and exercised whenever the interest of the party required it, and the enjoyment of a privilege in any particular *way* or *manner* for 20 years, gives a prescriptive right to continue such enjoyment. 2 *Saund.* 175. 1 *Ventr.* 137. 2 *Vernon,* 390. 2 *Johns. Ch. R.* 164. The declarations of *Crooker* were improperly received in evidence, and the court erred in their charge to the jury.

*B. F. Butler,* for the defendant in error, denied that the plaintiff was entitled to *one half* of the water flowing in the river. The river being divided by an island and three fourths of the water of the stream flowing naturally to the lands of the defendant, he was entitled to avail himself of those natural advantages, and the plaintiff had no right to interfere with the natural flow of the water and destroy rights acquired by the defendant in reference to those advantages. Neither was the defendant under any obligations to maintain a dam which should stop all the water; if the advantages of his location were such that he could avail himself of the water without having any dam whatever, it was not for the plaintiff or any one else to require him to keep up a dam, or to maintain it in such manner as to enable the plaintiff to participate with him in his advantages. Where parties are the owners of opposite shores of a river and their natural advantages are equal, the use of the water by one party may be inquirable into by the other, but not in a case like the present. In support of these positions the counsel cited 3 *Caines,* 307, 10 *Johns. R.* 241, 15 *id.* 213, 17 *id.* 306, 1 *Cox's New-Jersey R.* 460, 6 *East,* 213. As to the prescriptive rights set up by the plaintiff, it was submitted to the jury and found against him; if the jury erred, their error cannot be corrected on a bill of exceptions. No objection can be urged against the charge of the court, as no exception to it was taken at the trial, 8 *Wendell,* 111, 7 *id.* 216, 6 *id.*

274; nor will the judgment be reversed because the common pleas admitted evidence of the declarations of Crooker, for should the court be of opinion that such proof ought not to have been received, unless they are satisfied that it probably misled the jury, they will affirm the judgment.

*By the Court*, NELSON, J.   An attempt was made on the trial in the court below, to show that the plaintiff and those under whom he claimed had acquired a right by prescription to maintain the dam in question.   The weight of evidence I think was against the right, but whether so or not, the question was submitted to the jury and they have found against the plaintiff.

The principal ground urged for the reversal of the judgment is, that the common pleas erred in rejecting the testimony offered by the plaintiff.   I am of opinion this testimony was properly rejected.   The defendant was entitled to all the natural advantages which the place or site he occupied afforded him, and the plaintiff cannot maintain a right to divert the stream, because by greater expense or skill there would be still sufficient water left to drive the defendant's mills notwithstanding such diversion.   If the natural advantages were such as would enable the defendant to enjoy the use of his machinery without the expense of a dam or raceway, and the trouble of keeping them in repair, it could not for a moment be contended that the plaintiff might divert a part of the stream from the accustomed channel, because sufficient still continues to flow in it for the defendant's use if he would erect a dam and open a raceway.   No such principle can be found in cases of this kind, and we are not disposed to be the first to establish it.   We cannot take from one party a *right* for the sake of the *convenience* of another ; if the difficulty in the application of the principle contended for is not a sufficient objection to it.   If we should admit that the defendant was bound to keep his dam so as to prevent leakage, why not require him to alter its location, erect it higher, construct a new wheel that could be driven by a less quantity of water, or in fine, comply with any other well founded suggestion by adopting which, he would answer all his purposes, notwithstanding a part of the stream has been

NEW-YORK,
May, 1833.

Crooker
v.
Bragg.

wrongfully diverted from him ? If this was an action by the defendant to recover damages for the diversion of the stream, the evidence perhaps might be admissible so far as the amount he should recover was concerned, but when the question is one of mere right between the parties, I cannot think it relevant or admissible. A person through whose farm a stream naturally flows is entitled to have the whole pass through it, though he may not require the whole or any part of it for the use of machinery. Upon any other principle this right to the stream, which is as perfect and indefeasible as the right to the soil, would always depend upon the use, and a party who did not occupy the whole for special purposes, would be exposed to have the same diverted by his neighbor above him, without remedy, and which diversion by 20 years enjoyment, would ripen into a prescriptive right beyond his control, and thereby defeat any subsequent use. The doctrine of Lord *Ellenborough* in 6 *East*, 214, referred to and approved by Judge *Thompson* in *Palmer* v. *Mulligan*, 3 *Caines*, 315, is in accordance with these views.

The exception taken to the admission of the evidence in relation to the declaration made by *Sampson Crooker*, subsequent to the interview between Bennet and Gordon, cannot be sustained ; the whole of the evidence relating to this exception is quite unimportant, and when viewed in connexion with the mass of testimony upon the main question, would not, if erroneous, justify a reversal of the judgment. It is unnecessary to examine the charge of the court, as it was not excepted to.

Judgment affirmed.