THOMAS PLUMLEIGH, plaintiff in error, *v.* ALEXANDER DAW-
SON, defendant in error.

*Error to McHenry.*

In an action on the case for diverting a water course, evidence tending to show
that the stream which had been diverted, might be made valuable as a power,
and that, by its diversion, the plaintiff was damaged, is properly admissible.
. A special damage need not be proved in order to entitle him to a recovery.

A water course begins *ex jure naturæ,* and having taken a certain course, can-
not be diverted. Every riparian proprietor has an undoubted right to use
it for hydraulic purposes, if by so doing he do not injure another riparian
proprietor.

The water power to which a riparian proprietor is entitled, consists in the fall
of the stream, when in its natural state, as it passes through his land, or along
the boundary of it, and the water must pass from his land in its accustomed
channel.

Property in water is indivisible, and all riparian proprietors are entitled to an
equality of rights therein. They must use it as an entire stream, in its natu-
ral channel, and there can be no severance into parts for hydraulic purposes,
without consent.

An upper riparian proprietor may erect a dam and hydraulic works, and use the
whole stream to propel his mill, if he permit the water to flow in its accus-
tomed channel to the land of the lower proprietor.

The doctrine is well settled, that where a riparian proprietor is deprived of his
right, the law will imply a damage to him, and entitle him to nominal
damages at least. An action, therefore, may be maintained without proof of
actual damage.

It is a general rule, that Courts will not grant new trials, to enable the plaintiff
to recover vindictive damages merely; but if he be entitled to nominal
damages only, and the action be brought to try a question of permanent
right, a new trial may be granted.

CASE, for diverting a water course, in the McHenry Cir-
cuit Court, brought by the plaintiff in error against the
defendant in error. The cause was tried at the September
term 1844, before the Hon Richard M. Young and a jury, when
a verdict and judgment were rendered for the defendant.
The case is sufficiently stated in the Opinion of the Court.

*I. N. Arnold,* for the plaintiff in error:

An action on the case lies for any diversion or obstruction
of a water course, to the use of which the party complaining
has a right. 1 Leigh's Nisi Prius, p 564.

Plumleigh v. Dawson.

Every proprietor has an equal right to use the water that flows in the stream, and consequently no proprietor can have the right to use the water to the prejudice of any other proprietor; and cannot, without the consent of the other proprietors, diminish the quantity of water which would otherwise descend to the proprietors below. Ibid. 564; *Evans* v. *Merriweather*, 3 Scam. 494.

Every proprietor claiming a right to diminish, must prove an actual grant or license, &c. 1 Leigh's N. P. 564.

A plaintiff is entitled to recover for a partial diversion. Ibid. 564, 565; *Hill* v. *Mason*, 5 Barn. & Adolph. 26; S. C. 27 Eng. Com. Law R. 22.

"And it appears to us, that there is no authority in our law, nor as far as we know, in the Roman law, (which however is no authority in ours,) that the first occupant, (though he may be the proprietor of the land above,) has any right by diverting the stream, to deprive the owner of the land below, of the special benefit and advantage of the natural flow of water therein." 1 Leigh's N. P. 565; Lord Denman, in *Hill* v. *Mason*.

It must not, therefore, be considered as clear, that an occupier of land may not recover for the loss of the general benefit of the water, without a special use or special damage shown. Lord Denman, *ubi supra*; 1 Leigh's N. P. 566, 568.

In case for the diversion of water, the plea of "not guilty" puts in issue the fact of diversion only, and not the right to divert. 1 Leigh's N. P. 600; *Frankum* v. *Lord Falmouth*, 4 N. & M. 330; 1 H. & W. 1; 6 C. & P. 529; S. C. 25 Eng. Com. Law R. 526; 2 Adolph. & Ellis, 452; S. C. 29 Eng. Com. Law R. 140.

The right to use the water of a stream for domestic purposes, watering cattle, and irrigation, is to be so exercised as not essentially to diminish, or unreasonably to detain the water, and the right of using it for this latter purpose, will not justify the taking of water for other purposes, to the injury of other proprietors. *Blanchard* v. *Baker*, 8 Greenl. 253.

In an action on the case for diverting a water course, if

the unlawful diversion be proved, the plaintiff is entitled to recover, without proof of actual damage. *Ibid*

*O. Peters*, and *E. E. Harvey*, for the defendant in error.

1. The first instruction given by the Court, at the request of defendant, was correct.

The evidence to prove the rents and value of defendant's mill, was properly excluded from the jury; because the plaintiff is to recover, not the benefits obtained by the defendant, for the diversion of the water, but for the injury or damage the plaintiff has suffered thereby. The profits or advantages which the defendant has derived from the supposed tortious act, can furnish no rule by which to measure the damages which the plaintiff has sustained.

2. The third instruction, directing the jury to find only such damages as had been sustained by the plaintiff up to the commencement of the suit, was also correct; and this instruction is in conformity to the general and well settled rule of law, that cases are to be determined according to the rights of parties, as they existed at the time of action brought.

The continuance of the dam, and consequent diversion of the water, is, of itself a tort, for which an action will lie. Angell on Water Courses, 141, 144, and authorities there cited.

If proof were given of future and prospective damages, and the plaintiff could recover therefor in the present action, it would operate most unjustly. It must be entirely uncertain what those damages will be from the fact, that the future condition of the dam, and the length of time it will continue, are uncertain; if prospective, or future damages can be recovered in this action, the defendant may be twice charged, and the plaintiff twice compensated for the same injury.

3. The second and fourth instructions present the question, whether the plaintiff was not entitled to recover nominal damages on the proof of the diversion of the water, without proof of any actual damage.

The authorities cited fall far short of showing, that the plaintiff was entitled to nominal damages. There is a

Plumleigh *v.* Dawson.

difference in this respect between an action of trespass, and a special action on the case, for a tort.

Water flowing in a stream is *publici juris*, and the owner of the land through which it flows, can have no action for diverting or obstructing it, until he has converted it to a beneficial purpose, or prepared himself to do so. Leigh's N. P. 565, 566.

To give a right of action, the obstruction or diversion of the water, must injure or prejudice the owner of the land below. Angell on Water Courses, 12, note 2; Ib. 16; and in *Williams* v. *Morland*, 9 Eng. Com. Law R. 271, this point is settled on full consideration.

Nor was it necessary for the defendant to prove title to his land by exhibiting his title deeds. Possession is title enough for him. He may have had title by seven years' possession, which would estop all the world from denying his title; or he may have purchased and held by parol contract, which would be good till avoided, in which he could show no title by deed.

But it does not lie with the plaintiff to dispute the defendant's title. He is to show his right to recover damages; and though the defendant may have no title to the land above, and though he may be a mere trespasser, it makes no difference with the rights of the plaintiff.

4. But if the ruling of the Court were wrong, and if the verdict were wrong, it does not necessarily follow, that the case should be sent back for another trial.

From the whole evidence it is manifest that the plaintiff was entitled, at most, to nominal damages. If there was no actual damage, (and the jury have found this to be the fact,) then no rule of right and justice has been violated, but merely a technical rule of law. This subject is fully discussed in Graham on New Trials, 341 to 350.

The only exception to this rule is, where an important principle is involved, and the verdict is to be followed by serious consequences. *Turner* v. *Lewis*, 18 Eng. Com. Law R. 75, in note to that case. But this case does not come within the exception.

And in the case of *Levi* v. *Milne*, 13 Eng. Com. Law R. 396, the verdict was set aside, clearly by reason of the misconduct of the jury, not because they found for the defendant when the plaintiff was entitled to nominal damages.

The Opinion of the Court was delivered by

SCATES, J.   Case, for diverting a stream, called " Chrystal Lake Outlet," from plaintiff's land.   Defendant, Dawson, pleaded the general issue, to which there was a replication to the country ; also a special plea that he was owner of a tract of land above the land of the plaintiff, embracing the said stream, upon which he erected a dam, and upon it cut a race, through which he turned the waters of the stream to his mill below, on his own land, leaving enough water passing along the natural channel for all reasonable uses and useful purposes of the plaintiff, and so doing no injury to the plaintiff.

The plaintiff traversed the ownership of the land above him on the stream being in the defendant, and also the averment of his receiving no injury by the diversion, and issue to the country.

Upon the trial, the plaintiff showed title to his premises as alleged.   It also appeared that the stream was about one rod wide, and about one foot in depth ; that its fall, from where it entered to where it left plaintiff's land, was about four feet, four inches, and runs quick.   Dawson built a dam above plaintiff's land, and cut a race to his mill, and then returned the water to its former channel, below plaintiff's land.   About three fourths of the water runs through the race.   There is enough still passing the natural channel for agricultural and domestic uses.

The plaintiff's witnesses set an average damage done to the plaintiff by diverting the stream at five hundred dollars, partly in the beauty of the stream, partly in the saleability of the property, and partly in the loss of the water power.   The last item is fixed at one hundred and fifty dollars in making up the estimate ; and if only half the stream belonged to plaintiff, then at half that sum, though they state that half the water would be useless as a power, and that item should then be stricken out of the estimate.

The defendant's witnesses, and of equal number, do not think plaintiff at all injured by diverting the water; and a part of them, who were mill-wrights, state that it would cost the plaintiff more to make the water available as a power, than it would be worth in its use, and so conclude, as their opinion, that he is not injured.

The plaintiff asked questions, and proposed to show the cost of constructing the mill and race of defendant, and the yearly value of the mill, for the purpose of showing at what cost and of what value he might make the power available to him. The Court excluded this evidence by an instruction to the jury, and plaintiff excepted; and also to the second, third, and fourth instructions.

The second instruction was, that if the jury believe, from the evidence, that the diversion of the water course by the defendant did not damage the plaintiff, up to the time of commencing this suit, they ought to find for the defendant.

Thirdly, that plaintiff can only recover such damages as he sustained up to the time of commencing this suit, by reason of the diversion of the water from its original channel, under all the circumstances.

Fourth, that although the defendant may not have shown any right by title deeds, to the land on the opposite shore, yet, if the plaintiff is not damaged by diverting water from the stream passing through his land, the jury ought to find for defendant.

The jury found the defendant not guilty. A motion for a new trial was overruled, to which plaintiff excepted.

These several decisions and instructions are assigned for error.

For the purpose of showing the value of the water power to the plaintiff, and at what expense it might be made available, he offered to prove the cost of construction of defendant's works, and the value of the yearly rent of his mill. This evidence, I think, was pertinent as tending to establish a material fact, to wit, the amount of damage by deprivation of the stream. Some of the defendant's witnesses had given an opinion, that the use of the water was valueless to the

plaintiff as a hydraulic power, on account of the great expense in constructing the necessary works to make it available. The jury, having a description of the land over which defendant's race runs, and the fall at, and situation of his mill, with the cost of construction, and its yearly value, might much more readily arrive at a proper estimate of the yearly value of this stream to the plaintiff for hydraulic purposes, when informed of the character of the surface of his land, over which a race should run, the fall at, and situation for a mill upon his premises.

This evidence should have gone to the jury, not as a rule of damages, but as tending to show that the stream, which had been diverted, might be made valuable as a power, and that by its diversion, he was damaged. The instruction excluding it, is error. The instructions seem to proceed upon the ground that the plaintiff must prove a special damage, to entitle him to a recovery for a diversion. I apprehend that this is an erroneous principle. A water course begins *ex jure naturæ*, and having taken a certain course naturally, cannot be diverted. Bulst. R. 339. *Aqua currit et debet currere*, 1 Coxe, 460; so that all, through whose land it naturally flows, may enjoy the privilege of using it for culinary, agricultural, and hydraulic purposes, without adulteration, diminution or alteration, except so far as it may suffer that diminution by detention for lawful uses above. Every riparian proprietor has an undoubted right to use it for hydraulic purposes, yet he must so use it as to do no injury to any other riparian proprietor; for no one has, strictly speaking, a property in the water itself, but a simple use of it, and this is the necessary result of the perfect equality of rights among all the proprietors, of that which is common to all. 4 Mason, 400. The water power to which the riparian proprietor is entitled, consists in the fall of the stream, when in its natural state, as it passes through his land, or along the boundary of it; or, in other words, it consists of the difference of level between the surface where the stream first touches his land, and the surface where it leaves it. 3 Rawle, 84. And he must allow it to pass from his land in its accustomed channel.

These general principles seem to be the law in England, Scotland and the United States.  Angell on Water Courses, 11 to 20, § 3, and authorities there referred to.  It is, therefore, illegal to divert a water course, without returning the water to its natural channel before it reaches a riparian proprietor below.   Ibid. 13; *Bealy* v. *Shaw*, 6 East. 208; *Brown* v. *Best*, 1 Wils. 174; *Colburn* v. *Richards*, 13 Mass. 420.

The property in the water is indivisible.  The opposite or other proprietors in common, must use it as an entire stream, or whole, in its natural channel or body, for there can be no severance into parts in its use for hydraulic purposes, at least without consent.  Angell on Water Courses, 14; 13 Johns. 215; *Webb* v. *Portland Manufacturing Co.*, before Justice Story, in 1838.   The defendant, therefore, had no right to take three fourths or any other specific proportion of the water as his share, and divert it from the plaintiff's land.   He had a right, if he owned the land above, to erect a dam and hydraulic works, and use the whole stream to propel his mill, doing no unnecessary damage to a lower proprietor, but permitting the water to flow to him in its accustomed channel. He is allowed a reasonable use.   "There may be a diminution in quantity, or retardment or acceleration of the natural current indispensable for the general and valuable use of the water, perfectly consistent with the use of the common right."   And if not "positively and sensibly injurious by diminishing the value of the common right, is an implied element in the right of using the stream at all."   Per Story, J., in 4 Mason, 401; 17 Johns. 306; 15 do. 217.

There are some few cases in which the doctrine seems to be sanctioned, that there must be proof of actual damage to entitle the plaintiff, in this and like cases, to a recovery, as in 2 Barn. & Cres. 908.   But this case was rather questioned in *Mason* v. *Hill*, 5 Barn. & Adolph. 27.   But I think the doctrine well settled, that where a party is deprived of such a right, the law will imply some damage; for otherwise before the party might be able to prove actual damage, the wrong doer might acquire a right by prescription, or upon the presumption of a grant.   Thus an injury is likely to ensue from

such an invasion of his right, and which is sufficient damage to sustain this action for the recovery of nominal damages at least, and so establish his right. The cases on this principal I will not review, but only refer to those found in 2 Johns. Ch. R. 162; Skinner's R. 65; 1 Rawle 27; 2 Lord Raym. 938, 948; 958; 2 W. Black. 1233; 4 Term. R. 71; 2 East 158; 16 Pick. 241; 3 Fairf. 241; 10 Wend. 260; Cro. Jac. 478; 2 Levin, 250; 1 Barn. & Adolph. 415; 8 Greenl. 253, 268; 1 Bing. N. C. 549; *Webb* v. *Portland Manufacturing Co.*, U. C. C. for Maine, 1838. This last case is directly upon the question, whether the plaintiff will have a right of action for a diversion of a water course, although he has sustained no actual damages; and Justice Story held, after adverting to the authorities against, and for this principle, that an action would lie.

It is the opinion of the Court, that an action will lie for the violation of the right, without proof of actual damages, and, therefore, the instructions were erroneous. It is a general rule, that Courts will not grant new trials, to enable the plaintiff to recover merely nominal vindictive damages. But although the plaintiff may be entitled to nominal damages only, if the action be brought to try a question of permanent right, as in this case, a new trial may be granted. *Turner* v. *Lewis*, 1 Chitty's R. 265; same case, in 18 Eng. Com. Law R. 74.

The plaintiffs having proved, very clearly, a diversion, the law implies some damage, if it be not justified; the verdict, therefore, is against the evidence. For both reasons, a new trial ought to have been granted.

The judgment is reversed with costs, and the cause remanded with directions to award a *venire de novo*.

*Judgment reversed.*