JOHN GARWOOD, APPELLANT, v. THE NEW YORK CEN-
TRAL AND HUDSON RIVER RAILROAD COMPANY,
RESPONDENT.

*Diversion of water — when restrained by injunction — Chap. 237 of 1869 — what
right to water acquirable under.*

The plaintiff, the owner of a mill operated by the waters of the Tonawanda creek,
brought this action to restrain the defendant from diverting the water of said
creek by pipes and conducting it to tanks and reservoirs to be used in supplying
its engines, and to recover damages for such diversion. It appeared that the
acts of the defendant materially reduced and diminished the grinding power of
the plaintiff's mill, and had damaged him to the extent of $500.

*Held,* that the plaintiff was entitled to a judgment for a perpetual injunction re-
straining such diversion, and for the amount of the damages sustained.

*Held,* further, that the question whether or not such use by the defendant was
a reasonable one was immaterial.

*Semble,* that, under chapter 237 of 1869, a company is only entitled to take such
surplus water of a stream, as may be taken without injuring or interfering
with any domestic, agricultural or manufacturing purpose to which the water
of the stream is then commonly applied.

APPEAL from an order made at the Special Term in Genesee
county, denying plaintiff's demand for equitable relief and for a
judgment for damages, and ordering that the action be retained
as an action at law, for trial by a jury upon a single question
specified in the order.

The action was brought by the plaintiff, who is the owner of a
grist mill which is operated by the water of Tonawanda creek,
in the town of Batavia, to restrain the defendant from diverting
the water of said stream above the plaintiff's mill to certain
tanks and reservoirs, constructed by the defendant for the pur-
pose of supplying its locomotive engines with water, and also to
recover damages for such diversion.

The cause being at issue, the court, at Special Term, ordered
certain issues framed, to be tried by a jury, and they were after-
wards tried and a verdict rendered thereon. The issues and the
verdict were as follows:

*First.* Has the diversion of the water of the Tonawanda
creek, in the village of Batavia, above the plaintiff's mill, by the

New York Central Railroad Company and by the defendant, been of sufficient amount to perceptibly reduce the volume of water flowing in said creek, and so much as to materially reduce or diminish the grinding power of the plaintiff's mill ? If yes, for what length of time was such reduction or diminution continued ?

The jury answered yes to that question, and fixed the length of time at 474 days.

The second question was answered in the negative and is now unimportant.

*Third.* What damage has the plaintiff sustained by the diversion of the water of said creek from said mill by the New York Central Railroad and the defendant ? In answer to that question the jury fixed the damages at $500.

The plaintiff moved the cause for a final hearing at Special Term, on the verdict and the proofs taken on the trial of the issues, which the parties stipulated might be used for that purpose. Certain undisputed questions of fact of a formal character were admitted.

It appeared in evidence that the water was carried from the stream to the tanks by means of iron pipes, which the railroad company had laid in the ground for that purpose.

The cause having been heard, the court made an order directing that the demand of the plaintiff for equitable relief, by way of granting a perpetual injunction and compelling the defendant to take up its pipes and cease to use any of the water of the stream for supplying its engines and operating its road, be denied, and adjudging that the plaintiff, failing in the chief purpose of the suit, is not entitled to a judgment for the damages assessed by the jury; and further ordering, that as the question of reasonable use has not been passed upon, this action be retained as an action at law, and that the plaintiff have the right to bring the action to trial before a jury upon the single issue, whether the use of the water by the defendant was reasonable.

From that order the plaintiff appealed.

*M. Taggart,* for the appellant.   The plaintiff has, by virtue of the conveyance to him, a legal right to the flow of the water in

its natural channel or course. His right consists in the *current* of the stream. (2d Bouvier's Institutes, 170; §§ 1610, 1611, 1612, 1613; Gale & Whateley on Easements, ch. 5, § 129; *Shorey* v. *Piggott*, 3 Buls., 339; *Merritt* v. *Parker*, 1 Coxe [N. J.], 450; *Twiss* v. *Baldwin*, 9 Conn., 291; *Calmont* v. *Whitaker*, 3 Rawle [Pa.], 84, 88; *Pugh* v. *Wheeler*, 2 Dev. & Bat. [N. C. R.], 50.) The riparian owner has no right to use the water for irrigating his land, if thereby he deprives the proprietor below of the reasonable use of the water in its natural channel. (*Arnold* v. *Foot*, 12 Wend., 330; Angel on Water Courses, 125; *Ingraham* v. *Hutchinson*, 2 Com. Rep., 584; *Colburn* v. *Richards*, 13 Mass., 420.) The court below erred in deciding that the demand of the plaintiff for equitable relief, by way of granting a perpetual injunction and compelling the defendant to take up its pipes and cease to use any of the water of the stream for supplying its engines, and in operating its road, be denied. (*Walter* v. *Selfe*, 4 Eng. L. & Eq. Rep., 15; *Campbell* v. *Seaman*, 63 New York, 568.) The court below erred in deciding that the plaintiff was not entitled to the damages assessed by the jury. (Code of Procedure, § 167; *Corning* v. *The Troy Iron and Nail Factory*, 40 New York Reports, 191.) The plaintiff has a legal title to the use of the water and current of the stream, and could not be deprived of such right or title, without his consent, or by due course of law, and upon payment to him of a just compensation. (2 R. S., part 4, title 7, chap. 1, § 34; 2 Bouv. Law Dic., 646; Code of Proc., § 642; 1 Bouv. Law Dic., 636; § 6 of art. 1 of the Const. of 1846; § 7 of art, 1 of Const. of 1846; *Bloodgood* v. *Mohawk and Hudson R. R. R. Co.*, 18 Wend., 9; *H. R. R. R. Co.* v. *Outwaters*, 3 Sandf. Rep., 689; *Gardner* v. *Trustees of Newburgh*, 2 J. C. R., 162; chap. 237 of Laws of 1869; *Wynehamer* v. *People*, 13 N. Y., 378; *Morgan* v. *King*, 35 id., 454; *Rochester Water Works* v. *Wood*, 60 Barb. R., 107; *Clinton* v. *Myers*, 46 N. Y. R., 511; *Corning* v. *The Troy Iron and Nail Factory*, 40 id., 191; *Olmsted* v. *Loomis*, 9 id., 428; Code of Proc., § 167; *Webb* v. *The Portland Man. Co.*, 3 Sumner, 100; *Tyler* v. *Wilkison*, 4 Mason, 400; *Townsend* v. *McDonald*, 12 N. Y. R., 381; 2 Story Eq., § 101, 926, 927; Angel on Water Courses, § 449, 450; *Cott* v. *The Lewiston R. R. Co.*, 36 N. Y.,

214; *The Penn. Coal Co.* v. *Del. and Hud. Canal Co.*, 31 id., 91; *Brown* v. *Bowen*, 30 id., 519; *Olmsted* v. *Loomis*, 9 id., 423; *Pollitt et al.* v. *Long*, 58 Barb., 20 ; 2 Bouv. Inst., 174, § 1610, and note *b*, 1612, note *b*, 1613, note *b*, etc.) The defendant being a corporation existing by statute has no natural right to the use of the water. It is in no sense a riparian owner. (*Riley* v. *The City of Rochester*, 9 N. Y., 64; *Rens. and Sar. R. R. Co.* v. *Davis*, 43 N. Y., 137.)

*A. P. Laning*, for the respondent. By the common law of nature, the use of water flowing in its natural channel, like the use of heat and light, is common to all, and is not the subject of exclusive property in any. No one has absolute property in it until it ceases to be *aqua profluens*. (Justin, b. 2, tit. 1, § 1; Grot., b. c. 2, § 12; Puff, b. 4, c., § 52; Vattel, b. 1, c. 20, p. 101–110; Brown's Civil Law, b. 2, c. 1, p. 170; Vinius, 140, 141, 142; *Com'rs* v. *Kempshall*, 26 Wend., 422; Angel on Water Courses, §§ 121, 122; *Perkins* v. *Don*, 1 Root Ch., 535; *Mason* v. *Hill*, 3 B. & Ald., 306; 27 Eng. Com. Law, 11; 5 id., 1, and cases cited.) In the enjoyment of this natural right, the owner of the land over or through which a natural stream flows may abstract from the volume thereof, to drink, to water his cattle, for domestic purposes, for agricultural purposes, for mechanical or manufacturing purposes, and, in short, any general or useful purpose which ministers to his personal necessities, or his business interests, although, by so doing, the quantity is greatly diminished. (*Weston* v. *Allen*, 8 Mass., 136; *Lapham* v. *Anthony*, 5 Pick., 175; *Newhall* v. *Ireson*, 8 Cush., 595–599; *Blanchard* v. *Baker*, 8 Greenl., 253; *Arnold* v. *Foot*, 12 Wend., 331; *Embrey* v. *Owen*, 6 Exch., 368, note; *Wadsworth* v. *Tillottson*, 15 Conn., 366; *Mayor* v. *Com'rs, etc.*, 7 Barr. [Pa.], 348; *Weston* v. *Alden*, 8 Mass., 136; *Pitts* v. *Lancaster Mills*, 13 Metc., 156.) Such being the nature of the right, it follows that it is to be used in a reasonable manner, having reference to the rights of others, and it is only for an unreasonable use that an action is maintainable. (*Ward* v. *Ward*, 3 Exch., 778; *Weston* v. *Alden*, 8 Mass., 136; *Colburn* v. *Richards*, 13 id., 420; *Cook* v. *Hull*, 3 Pick., 269; *Anthony* v. *Lapham*, 5 id., 175; *Evans* v. *Monethon*, 3 Scan., 492;

*The Mayor, etc.*, v. *Commissioners, etc.*, 7 Bar., 348 ; *Howells* v. *McCuy*, 3 Rawle, 256; *Snow* v. *Parson*, 28 Vt., 459; *Platt* v. *Johnson*, 15 Johns., 217; *Dickinson* v. *Grand Junction Canal Co.*, 9 Eng. Exch., 521; *Elliott* v. *Fitchburgh R. R. Co.*, 10 Cush., ·193.)  As between proprietors on the same stream, the right of each qualifies that of the other, and the question always is, not merely whether the lower proprietor suffers damages by the use of the water above him, nor whether the quantity flowing on is diminished by the use, but whether, under all the circumstances of the case, the use of the water by one is reasonable and consistent with a corresponding enjoyment of right by the other. (*Cary* v. *Daniels*, 8 Metcalf, 477; *Merritt* v. *Brinkerhoff*, 17 Johns., 321 ; *Chandler* v. *Howland*, 7 Gray, 350; *Embrey* v. *Owner*, 6 Exch., 353 ; *Hitrich* v. *Deacher*, 6 Pennsylvania, 32; *Hartzall* v. *Sill*, 12 id., 248; *Pitts* v. *Lancaster Mills*, 13 Metcalf, 156 ; *Bliss* v. *Kennedy*, 42 Illinois Reports, 68; *Dumont* v. *Kellogg*, 29 Mich., 420; *Atchison et al.* v. *Peterson et al.*, U. S. Sup. Ct., reported in Alb. Law Jour., vol. 11, p. 238.) To hold that there can be no diminution, and no obstruction or impediment whatsoever, by a riparian proprietor in the use of the water as it flows, would be to deny any valuable use of it. (*Tyler* v. *Wilkinson*, 4 Mason, 401; *Palmer* v. *Mulligan*, 3 Caines, 30, *Dilling* v. *Murray*, 6 Indiana Rep., 324 ; *Snow* v. *Parsons*, 28 Vermont, 459, *Hays* v. *Waldron*, 44 New H., 580; *Davis* v. *Getchel*, 50 Me., 602; *Clinton* v. *Myers*, 40 N. Y., 514.)

SMITH, J. :

It is apparent, from the terms of the order appealed from, that, in making it, the Special Term acted upon the assumption that, although the diversion of the water by the railroad company had perceptibly and materially reduced the volume of the stream and lessened the plaintiff's water power to his damage of $500, as found by the jury, yet he was not entitled to relief by injunction to restrain its continuance, nor to recover his damages, for the reason that it had not been found that the defendant's use of. the water was unreasonable.  In this, we think the learned court fell into an error.

We understand it to be a principle of the common law that,

although every riparian proprietor has a right reasonably to use the water in the stream, and even to take it in small and reasonable quantities from the stream for domestic and other uses, yet he has no right to divert any part of the water of the stream into a course different from that in which it has been accustomed to flow, for any purpose, to the perceptible and material injury of any other riparian proprietor, without a grant, prescription or license. The doctrine of reasonable use has no application to a case of the latter description. A mere *detention* of the water, or a *pollution* of it, by one riparian proprietor to the detriment of another below him on the same stream, may be reasonable or unreasonable, according to circumstances, and if reasonable, no action will lie. This results from the general principle that each proprietor has an equal right to the use of the water as it passes along. But no proprietor can divert or diminish the quantity of water which would otherwise descend to the proprietors below, to their perceptible and material injury, without their consent. Thus, it has frequently been held that a mill owner has no right to divert the water, for the use of his mill, to the material injury of a mill owner below him. (*Brown* v. *Beet*, 1 Wils., 175; *Bealey* v. *Shaw*, 6 East, 208; *Sackrider* v. *Beers*, 10 Johns., 241; *Crooker* v. *Bragg*, 10 Wend., 260; *Corning* v. *Troy Iron and Nail Factory*, 39 Barb., 311; *S. C.* affir'd, 40 N. Y., 191.) Nor for the purpose of repairing his mill. (*Van Hoesen* v. *Coventry*, 10 Barb., 518.) Nor can it be so diverted for purposes of irrigation. (*Arnold* v. *Foot*, 12 Wend., 330; *Colburn* v. *Richards*, 13 Mass., 420; *Cook* v. *Hull*, 3 Pick., 269; *Anthony* v. *Lapham*, 5 id., 175.)

In *Gardner* v. *The Trustees of the Village of Newburgh* (2 Johns. Ch., 162) an act of the Legislature having authorized the trustees of said village to supply it with water, by means of conduits, and, for that purpose, to enter on the lands of other persons to make reservoirs and lay conduits, etc., and provided compensation for the owners of such land, and also for the owner of the land on which the spring, from which the water was to be conducted, was situated, but made no provision for indemnifying the owners of lands through which the stream flowed, and, from such spring had run, from time immemorial, for the injury they must suffer by divert-

ing the course of the streams from their farms, Chancellor KENT granted an injunction to prevent any proceeding to divert the stream until provision was made for a just compensation to the persons who might be injured by diverting the water. In *Tyler* v. *Wilkinson* (4 Mason, 397), STORY, J., after a thorough examination of the authorities, laid down the proposition that the true test of the principle and extent of the "reasonable use" of the water as it flows, to which each riparian proprietor is entitled is, whether it is to the injury of the other proprietors or not. The proposition was cited approvingly by GROVER, J., in *Clinton* v. *Myers* (46 N. Y., 511, 516). It is apparent from the context that the learned judge had reference to a *material* injury.

In Angell on Watercourses, where numerous authorities upon the subject are cited and commented on, the author remarks : "It is submitted, whether it may not be fairly deduced from the preceding authorities, that for any *essential* diminution of the water of a watercourse, which nature has directed to run in a certain and determinate channel, for *any* purpose, the law in this country will interpose." (Section 129 ; see, also, §§ 97–108, and cases cited in notes.)

The cases cited in the opinion of the learned judge in this case at Special Term do not appear to us to militate against the views above expressed. In *Pitt* v. *Lancaster* (13 Metc., 156) the only question for adjudication was whether the *detention* of the water was unreasonable. The point decided in *Embrey* v. *Owen* (6 Exch., 353; 20 Eng. Law Jour. [N. S.], 212; 4 Eng. L. & Eq., 466) was, that a diverting of the water by a riparian proprietor, for purposes of irrigation, did not give a right of action to the owner of a mill lower down on the stream, it appearing that the irrigation did not take place continuously, but only at intermittent periods, when the river was full, and that no damage was done thereby to the working of the mill, and that the diminution of the water was not perceptible to the eye. In *Elliot* v. *The Fitchburg Railway Company* (10 Cush., 191) the only point decided was, that one riparian proprietor cannot maintain an action against an upper proprietor for a diversion of part of the water of a natural watercourse flowing through their lands, unless such diversion causes the plaintiff actual perceptible damage.

In some of the cases cited by the defendant's counsel, and in many others that might be cited, it is said that each riparian proprietor may make reasonable use of the water for purposes of irrigation, and (in the case cited from 10 Cushing) for the purpose of supplying railroad engines with water ; but it is nowhere said that the use of the water, for either of those purposes, to such an extent as to work perceptible and material injury to a lower proprietor, is a reasonable use, or that it does not give a cause of action to the injured party. In view of the facts found by the jury in this case, there is and can be no question as to whether the use of the water which the railroad company has made, and proposes to make, is reasonable. It is a clear invasion of right, resulting in perceptible, essential damage to the plaintiff.

The railroad company having acquired a strip of land, six rods wide, adjoining the Tonawanda creek on each side, for the purposes of its incorporation, is probably vested with the rights of a riparian proprietor, so far as may be necessary to accomplish the objects for which it was created. But in the exercise of such rights it is subject to the same liabilities as other riparian proprietors. As was said by NELSON, J., in *Crooker* y. *Bragg* (*supra*), " we cannot take from one party a *right*, for the sake of the *convenience* of another ; " or, as was said in *Wheatley* v. *Chrisman* (24 Pa. St., 298), " the necessity of one man's business is not to be made the standard of another man's rights." The right to have the waters of a stream flow in their natural bed is as absolute and fixed as the right to the soil itself, and is incapable of being divested by any wrong-doer. If the defendant needs to draw water from the creek for the use of its road, in such quantity and so frequently as to essentially and appreciably lessen the flow of water to the plaintiff's mill, it must obtain his consent, or acquire the right to do so, under the statute, on making compensation, provided the statute extends to the case. Chapter 237 of the Laws of 1869, amending the general railroad act of 1850, recognizes the right " to take and convey water from any spring, pond, creek, or river, to such railroad, for the uses and purposes thereof," as one of the rights which a railroad company, needing the same, may acquire by purchase from the owner ; or, if unable to agree with the owner, by proceeding under the statute, subject to a

limitation in the act, which will be referred to presently. That act is a legislative recognition of the right of property in the water of running streams, of which the owner cannot be deprived, without his consent, or just compensation.

But if it be assumed that the views above expressed are erroneous, and that the plaintiff is not entitled to maintain an action, except upon showing that the defendant's use of the water is unreasonable, we do not understand upon what principle his prayer for equitable relief should be denied, while his action is allowed to proceed with a view to a legal remedy. If it should be found by the jury that the defendant's use was unreasonable, why would not the plaintiff be entitled to equitable relief? It seems to us that if, in truth, the plaintiff's case for equitable relief was defective, simply because the question of reasonable use had not been passed upon by the jury, the proper course would have been for the court to decide that question upon the evidence; or if the judge preferred to take the verdict of a jury upon it, then to frame an issue accordingly, and send it to the circuit for trial and reserve the hearing. That course would seem due to the plaintiff, especially as the issue of reasonable use was tendered by the defendants in their answer, and they did not ask to have it included in the issues which were framed to be tried by a jury. But, as has been said, the defence tendered by the answer, that the defendants had only made a reasonable use of the water, was wholly irrelevant, as the use they made of the water was an invasion of the plaintiff's absolute right. That courts of equity will interpose, by injunction, to restrain the wrongful diversion of the water of running streams, as in other cases of private nuisance, is too well-settled to require the citation of authorities. It is suggested in the opinion delivered at Special Term that the defendants have a right to use the stream, as they have done, in certain seasons of the year, referring, as we suppose, to seasons of high water. But in the case of *Crooker* v. *Bragg* (*supra*), it was decided that a stream of water cannot be diverted from its natural course without the consent of the owner, over or by whose land it passes; although such owner may not require the whole or any part of it for the use of machinery. "Upon any other principle," said Judge NELSON, delivering the opinion of the court in that case,

" this right to the stream, which is as perfect and indefeasible as the right to the soil, would always depend upon the use, and a party who did not occupy the whole for special purposes would be exposed to have the same diverted by his neighbor above him, without remedy, and which diversion, by twenty years enjoyment, would ripen into a prescriptive right beyond his control, and thereby defeat any subsequent use." Concurring in the doctrine of that case, and the reasoning by which it is sustained, we think the plaintiff is entitled to an injunction as prayed for in his complaint. If, at certain seasons of the year, there is a surplus of water in the stream not needed by the plaintiff for the use of his mill, and needed by the defendants for the use of their road, it does not follow that the defendants may, therefore, use such surplus ; but they may acquire the right to use it under the statute on making compensation. The limitation in the act of 1869, already referred to, is to the effect that nothing in said act contained " shall authorize the taking of any waters that shall at *the time of such taking* be commonly used for domestic, agricultural or manufacturing purposes, to such an extent as to injuriously interfere with such use in the future." That provision seems to warrant the construction that the right to use such surplus, and that only, may be so acquired.

The order of the Special Term should be reversed ; but as it is apparent that upon the verdict the plaintiff is entitled to judgment, this court should award judgment, and not order a new trial.

Judgment ordered in favor of the plaintiff for an injunction restraining the defendant from diverting the water of Tonawanda creek to the injury of the plaintiff, and for the damages found by the jury, with costs of the appeal, and the costs of the action.

TALCOTT, P. J., and HARDIN, J., concurred.

Order of Special Term reversed, and judgment ordered in favor of the plaintiff, that an injunction issue perpetually restraining the defendant from diverting the water of Tonawanda creek to the injury of the plaintiff, and that he recover the damages found by the jury, with costs of the appeal and of the action.