Pugh *vs.* McCarty.

E. H. PUGH, plaintiff in error, *vs.* JERRY McCARTY, defendant in error.

1. The plaintiff brought his action for libel, upon the following publication: "We have no reply to make to the statement of a lad who is convicted of perjury by the solemn oath of a gentleman whose veracity stands unimpeached and unimpeachable." The Judge charged the jury on the trial, that to charge another in a printed newspaper, published and circulated in the county, "that he is convicted of perjury," is actionable, without proof of special damages: *Held*, that this charge, when applied to the facts of the case was not sufficiently full, as it was calculated to produce an impression on the mind of the jury, that the legal effect of the publication was to charge the plaintiff with the commission of *legal perjury*, which most probably caused them to find heavier damages than they would have found, if they had been instructed that the publication did not amount to a charge of legal perjury.

2. Where the editors of two newspapers are engaged in a quarrel, conducted in the daily issues of their papers, in bad temper and bad taste, on the question who has the largest city circulation, and their employees volunteered to take part in the strife, and one charged an employee of the other, who was aiding in the quarrel, with theft and duplicity, and the other, in turn, charged that the employee of the first has been convicted of perjury, by the solemn oath of a gentleman whose veracity stands unimpeached and unimpeachable, and the latter brought suit for a libel on the charge contained in that published reply : *Held*, that the jury in such case, should give nominal damages only.

While the jury should give such damages in an action for libel, for a wanton assault made on an innocent person, as will fully compensate him for all his mental suffering and other injury, and will tend to check the licentiousness of the press, the same rule does not apply when those who conduct the press are voluntarily and mutually engaged in the publication of libelous matter concerning each other, and one sues and the other does not; while the action is maintainable, the damages should be rendered according to the circumstances of the case.

Libel.    Charge of the Court.    New Trial.    Before Judge GIBSON.    Richmond Superior Court.    July Term, 1869.

McCarty brought case against Pugh for maliciously publishing him, as having committed perjury, by reason of which he no longer was allowed by his acquaintances to have intercourse or business transactions with them. The words charged were as follows: "Not content with one oath from Jerry McCarty, they drag in another affidavit, almost a half a column in length. Surely, if their case is as clear as they pretend,

Pugh *vs.* McCarty.

one oath ought to suffice.  We have no reply to make to the statements of a lad (meaning plaintiff) who is convicted of perjury, by the solemn oath of a gentleman whose veracity stands unimpeached and unimpeachable."

The case was tried by a petit jury and plaintiff obtained a verdict for $5,000 00.  Pugh appealed.  On the last trial, plaintiff's attorney read in evidence an article printed in the Daily Press, of Augusta, Georgia, as follows : "The Chronicle and Sentinel, still sweating under our exposure of their duplicity in attempting to make it appear that they were entitled to the post-office printing, attempt to bolster up the statement of their mail clerk, (which is fully refuted, as every honest man knows, by that of Mr. Gregory,) in another column of vituperation.  Not content," etc., as *ante.*  "We proudly leave the issue, and the editors who are sponsors for Jerry's declarations to the verdict of the public" * * * .
The balance of the article is directed against Messrs. Moore & Wright, editors of the Chronicle and Sentinel, concluding with the remark that they should not charge an employee of the Press with theft, when everybody knew that Moore & Wright had pocketed $500 00 which belonged to the proprietor of the Press.

It was shown that at the date of said publication, Pugh was proprietor and publisher of the Press, that one Atkinson was its editor, and McCarty was (and still was) an employee of the Chronicle and Sentinel.  The defendant introduced no evidence.

At the request of plaintiff's attorneys, the Court charged the jury, that to charge of one, in a printed newspaper, published and circulated in the county, that he is convicted of perjury, is actionable, without proof of special damage.  He further charged that malice is an essential ingredient in libel, and in an action for damages plaintiff must prove the existence of malice, on the part of defendant, in making the publication, unless it imputes a crime, or something calculated to degrade him in society.  When the publication imputes no crime to the plaintiff, nor anything actionable, the jury cannot infer malice on the part of the defendant, and then

plaintiff must show that he sustained some damage in consequence of the publication. If the words of the publication complained of as a libel, are not actionable themselves, malicious intent in publishing them must be proved before plaintiff can recover.

The jury found for the plaintiff $2,500 00. Defendant's counsel moved for a new trial, upon the grounds that the Court erred in charging as requested by plaintiff's attorney, and because the verdict was contrary to the law and evidence, contrary to the balance of the charge and excessive. The Court refused the new trial, and error is assigned upon each of the grounds of said motion.

HILLIARD & KING, for plaintiff in error.

A. R. WRIGHT, by W. HOPE HULL, for defendant.

BROWN, C. J.

1. I do not think this case was fairly submitted to the jury. The legal proposition given in charge by the Judge, that to charge another, in a printed newspaper, published and circulated in the county, "that he is convicted of perjury, is actionable, without proof of special damages," is sound law, as its legal effect is to say, that it is actionable to charge another with the commission of legal perjury, without proof of special damages. But when applied to the facts of this case it was not sufficiently full, and was calculated to mislead the jury, at least on the question of damage.

The words upon which the action was founded in this case were these: "We have no reply to make to the statement of a lad who is convicted of perjury by the solemn oath of a gentleman, whose veracity stands unimpeached and unimpeachable." This was not a charge that the plaintiff had committed or been convicted of legal perjury. On the contrary, the whole statement taken together explained the meaning of the writer so clearly, that any person of common sense who read it, could have no difficulty in understanding it. It showed that there had been no oath taken in Court, in any

action on trial, or in any legal proceeding. In the controversy which was going on about the circulation of these two papers, Mr. Gregory had made a voluntary affidavit to one state of facts, and the plaintiff to another; and the charge simply meant, that it had been shown by the voluntary oath of Gregory, that the voluntary oath of plaintiff was not true.

But it is said this language, when printed and published, is libelous, though it might not be objectionable, *per se,* if spoken. I do not deny that it may be libelous. But I say it would not justify the jury in finding as heavy damages for the plaintiff, as a deliberate charge of legal perjury, written and published would justify. And I think the Judge should have so instructed the jury. To illustrate, suppose A writes and publishes of B that he committed perjury when testifying on a certain trial between C and D, in a Court of justice, in this, that the statement made by him under oath was positively false, but that he, A, is fully satisfied that B did it innocently because he thought his statement was true when he made it. And suppose an action for libel brought on this language, and the Judge on the trial should charge the jury, that it is actionable to charge another with perjury without proof of special damages, and stop there. This would be a sound legal proposition, but would it be a proper charge, when applied to the facts of the case on trial? Clearly not. It would be calculated to produce the impression on the mind of the jury, that, in the view of the Court, the effect of the publication was to charge B with legal perjury. And it would, if the publication as made were actionable, tend to induce the jury to increase the damages, as they would be sent to their room under the belief that A had charged B with a crime which he had not committed, and with which he had not, in fact, been charged.

2. But I am very well satisfied that the damages given by the jury, under the circumstances of this case, were excessive. An angry quarrel was being conducted, in bad spirit, and bad taste, between those who managed and controlled the columns of these two newspapers, about the extent of their circula-

tion. The employees of the two establishments, or at least part of them, had taken sides and voluntarily made themselves parties to the quarrel. It seems, from the record, that the charge of *theft* and *duplicity* had been made in the columns of the Chronicle and Sentinel against the employee of the Press, who had engaged in the strife, and in reply to this, the Press charged the employee of the Chronicle and Sentinel, so engaged, in the language already quoted. Whereupon he brought this action. Both parties were in fault, and so far as this record discloses, the party now suing, and the paper to which he belonged, were at least as much to blame as the other.

Now, while I do not claim that one tort can be set off against another, I say the jury should have taken into the account all these facts and mitigating circumstances, and should have found nominal damages only. See Code, section 3010. A party who provokes a difficulty, or who engages in it as willingly as the other party, and publishes libelous matter concerning his adversary, has no right, in law or morals, to recover as much damages as an innocent party, who is wantonly assailed by a libelous publication. Where there is equal culpability, and one party has a legal advantage, or one only appeals to the Courts, he is not a favored suitor, and should not be encouraged. He may have a legal right to recover, but his damages should be reduced, according to the circumstances of the case.

While the Courts should neither encourage nor favor those who are engaged in the publication of libels concerning each other, a very different rule obtains when the character of an innocent person is wrongfully and maliciously assailed. In such case, the jury should find such damages as will fully compensate the plaintiff for the injury done, including his mental or other suffering, resulting from the unfounded and malicious attack; and such as will tend to check the wanton licentiousness of such presses as knowingly pervert the truth, and wilfully malign private character. Code, sections 3011, 3012.

Judgment reversed.

Pugh *vs.* McCarty.

McCAY, J., concurred, but furnished no opinion.

WARNER, J., dissenting:

The law governing actions for libel, enunciated by the majority of this Court, as applicable to the facts contained in the record of this case, cannot, in my judgment, be sustained either upon principle or authority. When an appellate Court, decides the law governing a particular class of actions, that decision should be based on sound fundamental principles; otherwise, it will be considered as mere "vain babbling," entitled to no respect as authority, and will be productive of trouble and uncertainty, in the future. What is a libel? A libel is defined to be a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, *tending to injure the reputation of an individual,* and exposing him to public hatred, contempt, or ridicule. Code, section 2923. In all actions for printed or spoken defamation, malice is inferred from *the character of the charge.* Section 2924. What is the nature and character of the published libel in this case? Did it *tend to injure the reputation of the plaintiff?* The words published of and concerning the plaintiff, by the defendant, are as follows: "We have no reply to make to the statement of a lad who *is convicted of perjury,* by the solemn oath of a gentleman, whose veracity stands unimpeached and unimpeachable." How, and in what sense, are these words to be construed and understood by the well established rules of the law? Whatever may have been the rule at one time, as to construing words in actions for libel and slander, in their *mildest sense,* that rule has long since been exploded, and the rule is now well settled and established, that words, whether printed or spoken, are to be taken in that sense that is most natural and obvious, and in which those who read them, and to whom the same are spoken, will be sure to understand them. Starkie on Slander, 51; Peake vs. Oldham, Cowper's Report, 275–8; Woolnoth vs. Meadons, 5th East, 464; Roberts vs. Camden, 9th East, 93; *Cooper vs. Perry, Dudley's Report,* 247; *Little vs. Barlow,* 26th *Georgia*

*Report,* 423; *Giddens vs. Mirk,* 4th *Georgia Report,* 371. The general principles and rules of proceeding are the same, whether the plaintiff has been slandered by words, or libelled by writing, signs, pictures, or other symbols. 2d Greenleaf's Evidence, section 410. The deliberate *writing* and *publishing* slanderous words of, or concerning, the plaintiff, is, in the eye of the law, an aggravation of the injury. Can there be any doubt that the readers of the publication in this case, would understand that the plaintiff was charged by the defendant with the *crime of perjury?* Could any one have read it and not have understood that such was its plain import, and obvious meaning? The charge is, that the plaintiff is convicted of *perjury,* by the solemn oath of a gentleman whose veracity stands unimpeached and unimpeachable. The Court below charged the jury, "that to charge another in a printed newspaper, published and circulated in the county, that he is convicted of perjury, is actionable, without proof of special damage." The majority of the Court holds and decides, that this charge of the Court below, was error, because it was calculated to impress on the minds of the jury, that the legal effect of the publication was to charge the plaintiff with the commission of *legal* perjury, that the Court below should have charged the jury, that the published words did not amount to a charge of *legal* perjury. The point in the case is, whether it is necessary, under the law, that the defendant should have charged the plaintiff with having been *legally* and *technically* convicted of perjury, in order to enable him to maintain his action, without proof of special damage. Is there any difference in contemplation of the law, between a charge of *perjury,* and a charge of *legal perjury,* so far as *damage* to the reputation of the plaintiff is concerned? The charge of perjury *imputes that crime* to the plaintiff, whether the term *legal* is prefixed to it or not. I maintain, that to charge another, in a printed newspaper, published and circulated in the county, that he "*is convicted of perjury,*" is actionable, without proof of special damage, as was done by the defendant in this case, that the words contained in the publication were not to have been construed in

their *legal, technical sense,* but in that sense in which the readers thereof would be sure to understand them, according to their plain import and obvious meaning.    In the case of Peake vs. Oldham, before cited, Lord Mansfield laid down the rule, "that where words from their *general import* appear to have been spoken with a view to *defame* a party, the Court ought not to be *industrious* in putting a construction upon them different from what they bear in the common acceptation and meaning of them." In Woolnoth vs. Meadons, Le Blanc, J., said, "but nobody can read these words, (referring to the words charged in plaintiff's declaration,) without seeing what they meant to *impute* against the plaintiff.   It is not sufficient to show by *argument* that the words will admit of some other meaning, but the Court must understand them as all mankind would understand them, and we cannot understand them differently in Court, from what *they* would do out of Court." In *Little vs. Barlow,* this Court, McDonald, J., delivering the opinion said, "The old rule, that words spoken in disparagement of the character of a person, which are susceptible of two constructions, are to be understood in their *milder sense,* is exploded ; they are now to be interpreted in the sense that a person of *ordinary capacity,* who heard them spoken, would understand them.   To charge a person with stealing *imports* a felony.   To charge a person with being a thief, is actionable, because a thief is one who steals.   To say of him that he is a thieving wretch, or a thieving puppy, is actionable, for it *imports* a felony, and so any one of ordinary understanding, hearing the words, would interpret them.", Much more would such words be actionable if the defendant had deliberately reduced them to *writing* and *published them in a newspaper* of general circulation in the county."

But the majority of the Court, in this case, hold, and decide, that unless the defendant had charged the plaintiff with being a *legal* "thief," or with being a *legal* "thieving wretch," or a *legal* "thieving puppy," the damages should be *reduced.* Their point is, that because defendant did not charge the plaintiff with having been convicted of *legal* perjury, the damages should have been reduced on *that account,* and that

the Court below erred in not so charging the jury.  My point is, that the plain, obvious, *import* of the words published, was to charge the plaintiff with having been convicted of *perjury*, that is to say, with the crime of perjury, and so those who read it must have understood it.  If the plaintiff *is convicted* of perjury, then he is guilty of that crime, for the natural and obvious import of the words conveys that idea to the mind of every reader, that he would not have been *convicted of perjury* unless he was *guilty of perjury*.  There is no more *practical* difference, as to the effect of the charge made in the publication, on the reputation of the plaintiff, in the minds of common readers, between " a conviction of perjury" and " a conviction of *legal* perjury," than in the attempted explanation of a witness of his testimony, who stated, that he did not say, "McCarty *come out here,*" but said, "*come out here,* McCarty."  The question is, did the plain, obvious, meaning of the words contained in the publication *impute* to the plaintiff the crime of perjury, according to the *common understanding of them ?*  In *Cooper vs. Perry,* the convention of Judges held, that words which are doubtful, or even innocent in themselves, if they be proven to have a *criminal signification,* according to the common understanding of them, are actionable, and it was held in that case, that the words, "you are a member of the Pony club," were actionable, and that the case should be submitted to the jury, and if the words were proven to *impute* the crime of horse stealing, in their *common acceptation,* the plaintiff might recover.  In Steele vs. Southwick, (9th John. Reports, 214,) the words contained in the published libel were, "our army swore terribly in Flanders, said uncle Toby, and if Toby was here now, he might say the same of some modern swearers, the man at the sign of the bible (meaning the plaintiff) is no slouch at swearing to an old story."  The Court said in that case, "if the words do not import perjury, in the *legal sense,* they hold the plaintiff up to contempt and ridicule, as being so thoughtless, or so immoral, as to be regardless of the obligations becoming a witness, and therefore to be utterly unworthy of credit.  In this view, the words are actionable."

Pugh *vs.* McCarty.

The defendant, in the record now before us, charged in the publication that the plaintiff *is convicted of perjury;* that charge tended to injure the reputation of the plaintiff and to expose him to public hatred and contempt. The fact that the defendant states that he is convicted of perjury by the solemn oath of a gentleman, whose veracity stands unimpeached and unimpeachable, does not lessen or weaken the force of the charge made, to the minds of the common readers of that publication. How many of those readers knew, or understood, that the oath of the unimpeached gentleman, was not sufficient to convict him of the offense with which the defendant charged him in the publication? The charge is, that he *is convicted of perjury,* and a few professional readers might know that the oath of one unimpeached gentleman, was not sufficient to *legally* convict the plaintiff in a Court of justice, but such would not be the understanding of a large majority of the readers of that publication; they would neither read nor understand it in its *legal, technical sense,* but would read and understand the words according to the natural, obvious, *import* thereof, and the natural, obvious *import* of the words is, to charge that the plaintiff is guilty of *the crime of perjury.* According to my understanding of the law, as applicable to the facts of this case, there was no error in the charge, of the Court below, to the jury. The *imputation* contained in the publication, that the plaintiff "is convicted of *perjury,*" was as injurious to his reputation as if it had been stated therein that he " is convicted of *legal* perjury." The plain *import* of the words is, that the plaintiff "is convicted of *perjury,*" a crime well understood by everybody who read that publication. In an action for libel, the question is not whether the intention of the publisher be to injure the plaintiff, but whether the *tendency of the matter published* be injurious to him. Fisher vs. Clement, 21st English Common Law Report, 117.

Nor can I concur in the judgment of the majority of the Court, as to the rule of damages in this case. The question of damages in an action for libel is, in my judgment, a question for *the jury,* under the evidence submitted to them, and not

a question for *the Court,* unless, on a motion for a new trial, the damages shall be *excessive,* and then the Court should not interfere with the verdict, except in extreme cases. In *Bishop & Parsons vs. the Mayor, etc., of Macon, 7th Georgia Reports,* 204, Lumpkin, J., said, "the reason why the Court will not disturb the verdict of the jury in batteries, *libels, crim. cons,* malicious prosecution and the like, is that there is in fact no criterion of damages to regulate the verdict." See *Lang vs. Hopkins,* 10*th Georgia Reports,* 45. It is true, that the 3010 section of the Code declares, "that if the injury be small, or the mitigating circumstances be strong, nominal damages only are given," but who is to be the judge of the injury, or the mitigating circumstances, in an action for libel, the Court, or the jury? The 3012th section of the Code answers the question, in my judgment. That section declares that in some torts the entire injury is to the peace, happiness, or feelings of the plaintiff; in such cases, no measure of damages can be prescribed, except the enlightened consciences of impartial jurors. What injury was done to the peace, happiness, or feelings of the plaintiff, in this case, when he was published to the world, in a public newspaper, as being *convicted of perjury,* can better be ascertained by an impartial jury of the vicinage under the evidence in the case, than by an appellate Court. If the verdict shall be excessive, then the appellate Court can review and set it aside, on a proper case being made; but where this Court derives its legal authority to declare *in advance* of the trial of the case, that *nominal* damages only should be recovered upon the statement of facts presented by the record, in the Court below, is beyond my knowledge. The verdict of the jury rendered in the case, according to the former adjudications of this Court, is not so excessive as to authorize any interference with it. *Lang vs. Hopkins,* 10*th Georgia Reports,* 45. I am, therefore, of the opinion that the judgment of the Court below should be affirmed.