David Flanders, plaintiff in error, vs. Mary Meath, by her next friend, defendant in error.

Where a person voluntarily throws themselves in the way of a dray, and an injury ensues, the jury may find almost nominal damages, notwithstanding they should be of the opinion that the driver of the dray was *slightly* more in fault than the party hurt. Notwithstanding the jury may think the person injured altogether in fault; yet, if from pity, or any other consideration, they should return a verdict for damages, and the defendant acquiesce in it, the plaintiff cannot complain, and demand a new trial.

Case, from Bibb county. Tried before Judge Lamar, June, 1858.

This was an action on the case by Mary Meath, by her next friend, Darby Meath, against David Flanders, to re-

cover damages for injuries received by plaintiff from the dray of defendant, in the streets of Macon; said dray, at the time, being driven by a negro belonging to, and in the employment of defendant. The damages were laid at five thousand dollars.

The defendant pleaded the general issue.

The following was the evidence, in substance, offered on the trial.

Plaintiff herself was presented to the view of the jury, and the injuries upon her head exhibited.

*William Dillard*, swore, that he was standing on the side-walk, near the house of Darby Meath, the father of plaintiff. Plaintiff started to run across the street, when a dray, drawn by two mules, and driven by a negro man, was coming down the street at a very rapid rate; the mules, dray and driver were reputed to belong to the defendant—have seen him control them; the mules were the fastest pair about the city, and were going at their best speed, in a trot. The plaintiff ran about 49 feet, and just cleared the heads of the mules, and was caught in the hind wheel of the dray, which ran over her body and head; the driver rather struck his mules with the lines the moment after plaintiff was run over, and went on to the bridge, some 120 to 150 yards, before making any halt. Witness picked plaintiff up, and found her head badly lacerated, and cut from the top over her face, down to the lower part of her cheek; the whole side of her face and ear appeared to be loose, and torn from the skull.

*Cross-examined :* Plaintiff is a very wild and awkward child, in the habit of running in the streets—have seen her run in front of vehicles just as they were passing, and came near being run over—have told her parents that she would some day get hurt, if they did not keep her out of the street; told them of her running in front of passing vehicles. There was a school just opposite the house of Mr. Meath, to which plaintiff was going; the driver was in the

habit of passing that street every day; the children in the neighborhood were in the habit of playing in that street, in front of the school house. There was a rain coming up at the time; it was raining in sight; there was a sack of flour and a sack of meal on the dray at the time. After running over the plaintiff, the driver did not look around, but kept on until he reached the bridge, before slackening his pace; the negroes on the dray were in the habit of driving unusually fast, and were frequently dancing and singing on the dray, as it was in motion.

*Dominick Garaughty* sworn, testified that he saw plaintiff soon after the injury; she was badly hurt; her head was badly cut, from the top to the lower part of her cheek; the physician was then dressing the wounds; she was also much injured on her thighs; since the injury, she has not been as she was before; she has become more stupid and self-willed, and her parents cannot exercise authority over her; she will never, in witness' opinion, be as she was before; saw the place where the injury was done; there was a hole like a hen's-nest, made by plaintiff's head, in the ground; have known plaintiff from her cradle; she was a bright child, but willful and uncontrollable; she was wild before, but is wilder still.

*Cross-examined:* The children in the neighborhood were in the habit of playing in the street, and witness has seen plaintiff running about the street, when vehicles were passing, and her parents knew it.

*Re-examined:* Has known plaintiff to suffer, and cry out, in agony, complaining of pain in her ear and head, since the wounds have healed. When witness first saw her, after she was injured, her ear was loose and almost severed from her head.

Here plaintiff closed, and defendant introduced no evidence.

When the plaintiff was exhibited to the Court and jury, there appeared a large rough scar, from the crown of h er

head, down near the lower part of the right cheek, from a half to three quarters of an inch wide.

The jury found for the plaintiff fifty dollars, whereupon, plaintiff moved for a new trial, on the following grounds:

1st. Because the damages found by the verdict are inadequate to the injuries sustained.

2d. Because the verdict is against the evidence, and against the weight of evidence.

3d. Because the verdict is against law, and the charge of the Court.

4th. Because the verdict shows caprice, partiality and perverseness on the part of the jury.

Before argument on the motion for a new trial, defendant offered to file the affidavit of Doctor Lightfoot, the physician in attendance upon plaintiff, when she was injured, that the mind of plaintiff was not injured, that it was as good as it ever was. The Court refused to hear said affidavit, or allow it to be filed.

Counsel for defendant then inquired of plaintiff's counsel, upon what ground they claimed a new trial, who replied, on account of the smallness of the damages.

The Court, after argument, granted the motion for a new trial, and defendant excepted.

STUBBS & HILL; and WM. T. MASSEY, for plaintiff in error.

POE & GRIER, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

It is said that the verdict in this case, cannot be justified on legal principles, and so the presiding Judge seemed to think. That if the jury found for the plaintiff, they were bound to find a larger sum. Is this so?

There was a principle referred to in the case of the Wynn girl, against the Macon and Western Rail Road Co., decided at the July Term, 1858, of this Court, at this place, which

we hold to be sound law—although, we did not think it applied to the facts of that case, where both parties are in fault, but the defendant most so; the fault of the plaintiff may go in mitigation of damages. Suppose the jury, in this case, came to the conclusion that both parties were in fault, but the defendant *slightly* more so, so as to give the plaintiff a cause of action; in such case, but small damages would be awarded. This obvious rule seems to have been overlooked by Lord Campbell, in a recent trial in England, if the newspaper report of it be reliable, who, because a jury returned a verdict of one farthing damages, and adhered to it, reminded them of the ancient privilege of the Court, to keep them confined till the end of the Term, and then cart them to the boundary line of the county, and have them tumbled into a ditch.

We doubt not, however, that the jury thought of this transaction as we do; that the fault was wholly on the part of this wild and wayward girl. A heavy rain was impending, and the dray of the defendant having flour and meal on board, was hurrying at a rapid trot, to escape. The street was some two hundred feet wide. The little girl ran out forty-nine feet from the side-walk; passed in front of the dray, just clearing the heads of the mules; the movement was voluntary and intentional; it was in proof by the plaintiff's own witnesses, (the defendant introduced none,) that she was in the habit of doing these things; that the fact had been communicated to her parents, and they had been warned, that if they did not restrain her, she would be hurt; the next that was seen of her she was down between the front and hind wheels of the dray, on the opposite side from the one from which she approached the vehicle; and the hind wheel ran over her, inflicting a considerable injury upon her head and body; how she came there does not appear; whether she was attempting to get into the dray, or swing to it, or what, we cannot tell.

Can persons throw themselves across a rail-road track,

or under a dray, and expect to recover, because they are hurt? Still the jury saw fit to give $50, and the defendant acquiesces. Can the other side complain for getting more than they are entitled to ?

The conduct of children must be controlled; the failure to do this, is the curse and ruin of this country, and if parents will not do it, it is a misfortune that the lesson has to be enforced by such catastrophes as the present.

Judgment reversed.