POTTER vs. SWINDLE.

77 419
128 473

1. Though an arrest without warrant be justifiable, yet to detain the prisoner longer than a reasonable time for suing out a warrant, then to handcuff him, carry him out of the county, and there in-carcerate him for days, under no warrant whatever, is false impris-onment, if not kidnapping, and a finding by the jury of twenty-five dollars damages is no compensation for the injury.

2. The case, in any view of it, not being one for nominal damages only, it was error to suggest to the jury that a finding of one cent was legally possible under the declaration.

February 26, 1887.

False Imprisonment. Damages. Verdict. Charge of Court. Before Judge BOWER. Mitchell Superior Court. March Term, 1886.

W. T. Potter sued G. W. Swindle for false imprisonment, laying his damages at $5,000.

On the trial, the evidence for the plaintiff was, in brief, as follows: He was a school-teacher in Alabama, and was a peaceable man of good general character. In September, 1884, he started to Florida and passed through Mitchell county, Georgia, en route. There he was arrested by the sheriff of that county, the defendant. On inquiry as to the reason, the defendant informed him that he was arrested as an escaped convict from Tangipahoa county, Louisiana. He protested that he was not the man, and exhibited his license to teach in Alabama and an account book with a merchant there. He was examined by a physician for marks on his person corresponding to those described as on that of the convict, but nothing was found except a vaccination mark on his arm. He had had a stroke of paralysis in his childhood which impaired the use of his left arm and caused a dragging or shuffling in walking with his left leg. The description of the escaped convict's hair, eyes, etc. did not correspond with those of the plaintiff. It was contained in a card offering a reward for the convict's arrest, and stated, among other things,

that he had been shot in the left arm, causing it to perish away above the elbow, and that he had also been shot in the left leg above the knee. The plaintiff was arrested on Friday, September 26. He caused a telegram to be written to a judge of probate in Alabama, which defendant, who had his pocket-book, promised to send. Plaintiff was guarded that evening and night. The next morning, the defendant told him he had not sent the telegram, but had telegraphed an officer in Louisiana, and had received a reply that the latter would be there as soon as possible, and directing that the man be held. The plaintiff insisted that he was not the man, and wanted and asked for an opportunity to identify himself, but this was refused. He was then handcuffed and carried to Albany and put in jail, where he was kept until about twelve o'clock at night on the following Wednesday. The Louisiana official then arrived, stated that he was not the right man, and that he was released, so far as he (the official) was concerned; but the jailer declined to let him out until about noon on the next day, when he received a telegram from the defendant. He was not the convict sought, and had never been in the State of Louisiana in his life.

The evidence for the defendant was, in brief, as follows: A notice was sent out by officials in Louisiana offering a reward for the arrest of one William Berry, an escaped convict, who had been convicted of manslaughter, and giving a description of him. The plaintiff fitted that description very accurately. The defendant arrested him, and had him examined by a physician and carried him before a justice of the peace, but swore out no warrant. These and others thought the plaintiff was Berry, and the justice advised the defendant to hold him. The defendant asked the plaintiff for the names of persons who could identify him. The plaintiff seemed very careless about the matter, and gave no names except one judge of probate. The defendant telegraphed to him, but received no reply. The plaintiff said he did not know the sheriff of his county;

knew of a former sheriff, but did not want a telegram sent to him. He said also that he had killed a man in Alabama, but could not be hurt for that. He had a withered arm and leg; on his left arm was a scar which might have been from vaccination or from a wound; and these marks fitted the description of Berry. The defendant telegraphed to the sheriff in Louisiana, and on receipt of a telegram from him, asking that the man be held, he handcuffed the plaintiff and carried him to jail; did not abuse him, but treated him kindly. When the arrest was made, the defendant had his pistol in his hand. The plaintiff said he had one in his baggage, and it was a damned good thing for defendant that he did not have it with him, or he would not be arrested. He cursed and abused defendant and seemed dangerous; hence he was handcuffed. After his release and on his return to the place of arrest, the defendant delivered his property to him and paid his expenses and his hotel bill for one or two days. He acted in good faith and had no ill-will against the plaintiff.

The jury found for the plaintiff $25. He moved for a new trial on the following grounds in substance:

(1.) Because the court erred in charging the jury that, under the declaration in this case, they would be authorized to find any amount between one cent and five thousand dollars, the sum sued for, but could not find more than five thousand dollars.

(2.) Because the verdict was contrary to law and evidence, and so small as to show bias or prejudice on the part of the jury.

The motion was overruled, and the plaintiff excepted.

D. H. POPE, for plaintiff in error.

I. A. BUSH, by J. H. LUMPKIN, for defendant.

BLECKLEY, Chief Justice.

A citizen of Alabama was traveling through Georgia, going to Florida. In passing a county town, he was noticed

and happened to be compared with the description of an escaped convict who was under sentence in the State of Louisiana. The sheriff having that description, and thinking, from the almost perfect fit of the same to the unknown traveler, that he was the man described, arrested him, and carried him before a justice of the peace, and the justice of the peace advised that he be detained. No warrant was sued out against him. The sheriff handcuffed him and carried him to the jail of an adjoining county, and imprisoned him several days, until some one came from Louisiana, inspected him, and determined that he was not the escaped convict; and then he was turned out of jail and permitted to pursue his way. He brought his action for this outrage against the sheriff, which was tried, and the jury found a verdict in his favor for $25 damages.

1. Though an arrest without warrant be justifiable, yet to detain the prisoner longer than a reasonable time for suing out a warrant, then to handcuff him, carry him out of the county, and there incarcerate him for days under no warrant whatever, is false imprisonment, if not kidnapping, and a finding by the jury of $25 is no compensation for the injury.

Kidnapping is defined in §4367 of the code, and seems to be a close neighbor to this transaction. The very least that could be made out of the facts would be a gross case of false imprisonment. Code, §4364; 63 *Ga.* 513.

The statute authorizes the jury in certain cases (and this is one of them) to give exemplary damages, by way of deterring the defendant from repeating the tort, or committing similar torts. Code, §3066. But here, as it would seem, the jury attempted to teach the plaintiff by sad experience not to bring any more such actions. We think they looked exactly to the contrary of the direction in which they should have looked. Their object seems to have been to discourage men from asking legal redress for grave injuries, instead of making the violators of law smart for injuries inflicted. It is plain that, although this arrest may have been justifi-

able, the sheriff deliberately, and apparently thoughtfully, declined to observe the law, which commanded him, if not expressly, by clear implication, to obtain a warrant within a reasonable time. Code, §4725; *Id.* §56; 63 *Ga.* 513. He went before a justice of the peace, and that proves that he had a reasonable time. He declined even to apply for a warrant, and took this man to an adjoining county, handcuffed like a criminal, put him in jail, and confined him there a number of days. It is obvious that he had no more right to treat the plaintiff in that manner than the plaintiff had to treat him so. It would have been just as much a $25 case for damages if the Alabama citizen had captured the sheriff and carried him to Albany, handcuffed, and put him in jail. Even if this man had been guilty, if he had been the escaped convict that he was supposed to be, he ought to have had heavy damages, or at least full compensatory damages, for such an outrageous violation of law on the part of the sheriff. If anybody ought to keep the law, it is those who are engaged in its administration. What excuse can an officer have for not obtaining a warrant when he has made a legal arrest without one? If officers of the law can be tolerated in violating the law in this manner, what inducement has anybody to abide by the law?

2. We think such a verdict could hardly have been rendered by an impartial jury but for an error committed by the court in its charge. The court instructed the jury that under the declaration they might find for the plaintiff any amount from one cent to $5,000, the limit of the damages alleged in the declaration. This was equivalent to telling the jury that they might give nominal damages, or compensatory damages, or exemplary damages, just as they thought proper. These were not appropriate instructions in such a case. It is no case for nominal damages. It is no case for one cent, or any small number of cents, under the evidence, and the jury ought not to have been turned loose by the charge of the court to consider the question

of nominal damages at all.    Possibly, if that error had not been made, the verdict would not have been so grossly inadequate.

The case, in any view of it, not being one for nominal damages only, it was error even to suggest to the jury that a finding of one cent was legally possible under the evidence.

Judgment reversed.