321 Ga. 854
FINAL COPY

S24G1104. WALMART STORES EAST, LP v. LEVERETTE.

PINSON, Justice.

At common law, juries would routinely award "nominal damages" to a plaintiff who proved the violation of her legal rights but failed to prove any amount of actual damages with enough certainty. These nominal damages were widely understood to be only a "trivial sum," important for the fact of the award but not meaningful as an amount. In England, that sum was often a shilling (equivalent to 12 pennies), and after nominal damages traveled across the Atlantic, that sum was first a few pennies, and later, typically a dollar.

In this case, however, a jury awarded the plaintiff "nominal damages" of not a single dollar, but a million of them. The Court of Appeals affirmed that award because it followed binding precedent of that court, which had held that nominal damages have "no maximum" limit on their amount. We granted review to determine whether that award exceeds the limits on nominal damages under

Georgia law.

We now conclude that it does. We set out the reasons in detail below, but the short version is this: In the late 1700s, our legislature adopted the common law of England as our own. This means that the English common law, including its rules about nominal damages, became the law of Georgia. All of those rules remain in force and effect unless and until the legislature modifies or displaces them (by statute or constitutional amendment). As we show in detail below, the legislature has not displaced the well-settled common law rule that nominal damages are only a trivial sum. So the Court of Appeals's precedent holding that nominal damages may be awarded in virtually any amount is overruled. And because a million dollars is not a trivial sum by any rational measure, the judgment below, which affirmed the verdict, must be vacated.

This does not, however, resolve whether the jury's verdict in this case must ultimately be vacated. For one thing, the plaintiff contends that the jury's verdict should not be disturbed because any

error in it was invited by the defendant. For another, given the particular combination of jury instructions, an unusual special verdict form, and the overall jury verdict in this case, the appropriate remedy, if any, is not clear. But these are case-specific questions about which we did not grant review, so they are left for the courts below to resolve on remand.

I. *Background*

On April 25, 2018, Bettie Leverette was shopping on a motorized scooter at a Walmart store in Conyers. As she shopped, two Walmart employees were moving a box that weighed around 2,000 pounds on a pallet jack. They moved the box down an aisle with one person on either side: one pushed the box forward, the other pulled toward himself, looking over his shoulder every few seconds to avoid collisions. The pair backed into Leverette.

The employee who was pulling the box testified that he bumped into Leverette and then pushed against the box to stop its momentum. He testified that the contact was "[v]ery light, not harsh at all." Leverette also testified that "it didn't seem like" she was hit hard or

3

hurt in that moment. Still, she filled out an incident report at the store before continuing to shop and eventually leaving. Later that night, however, Leverette went to the hospital reporting head pain, blurred vision, and nausea. She was initially diagnosed with a non-specific head injury, and she was later diagnosed with a mild traumatic brain injury and post-concussion syndrome.

Leverette sued Walmart, claiming that the symptoms she experienced came from being hit by the box, and that they were caused by the Walmart employees' negligence. At trial, Leverette's family members testified that she exhibited increased confusion and had constant headaches after the Walmart incident. They said that she has become forgetful, can no longer drive, complains of pain in her neck, has frequent nausea, cries for no reason, and can no longer work. Leverette also introduced expert testimony from doctors about the extent and cause of her injuries. An expert life-care planner testified about the costs for Leverette's continued medical care for the rest of her life. She testified that Leverette needed 24/7 in-home care, among other treatments, and she projected that the cost of this

care would amount to anywhere from $2 million to $3.5 million over her lifetime.

For its part, Walmart argued that Leverette's symptoms were largely due to pre-existing health conditions that included carpal tunnel syndrome, chronic obstructive pulmonary disease, emphysema, renal failure, and heart disease. Walmart's experts testified that Leverette's symptoms could not be connected to the Walmart incident. And an expert life-care planner for Walmart testified that Leverette's expert had overestimated the costs of future care. She testified that many expenses were unreasonable and unnecessary, and that no medical professional had ever said Leverette needed 24/7 in-home care. An expert neuropsychologist also testified that Leverette was malingering.

After the close of evidence, the trial court gave the pattern jury instruction on nominal damages at Walmart's request. Walmart argued in closing that Leverette was entitled to nominal damages at most. Walmart's counsel said: "What would be a proper amount of nominal damages is a question for you to decide under all the facts

and circumstances of the case. It can be $10, it can [be] $100, it could be $500, but it should not be 3 million." Leverette's counsel argued that the jury should award $5,596,168: the cost of the services that the life planner said Leverette needed plus compensatory damages for pain and suffering.

The jury found in favor of Leverette. The verdict form prepared by the parties included three options for damages: nominal damages; future care expenses; and past, present, and future pain and suffering. The jury awarded $1 million as nominal damages, leaving blank the lines next to the other listed categories. Walmart moved for a new trial, arguing that the award was excessive or that it was the result of bias or prejudice. The trial court denied the motion, and the Court of Appeals affirmed, relying mostly on a line of Court of Appeals precedent that authorized large amounts to be awarded as "nominal" damages. See *Wal-Mart Stores E., LP v. Leverette*, 371 Ga. App. 543, 550-554 (1) (901 SE2d 607) (2024).

We granted review to determine the limits, if any, on the amount of nominal damages that may be awarded by a jury.

II. *Analysis*

The common law of England has long been the "backstop law" of Georgia. *State v. Chulpayev*, 296 Ga. 764, 780 (3) (b) (770 SE2d 808) (2015). In 1784, our legislature adopted the common law of England as of May 14, 1776, as Georgia law. Id. (citing OCGA § 1-1-10 (c) (1)). Since then, the sweep of this body of common law has narrowed as our legislature has enacted statutes that either codified, modified, or displaced the common law rules that make up that body of imported law. But the common law is still baked into Georgia law in meaningful ways. For one thing, when the legislature acts, it does so (we presume) "with full knowledge of the existing condition of the law and with reference to it," and statutes are therefore "construed in connection and in harmony with the existing law." *Gray v. State*, 310 Ga. 259, 262 (2) (850 SE2d 36) (2020) (citation and punctuation omitted). That existing law includes any common law rules in the area of law into which the new statute fits. And speaking of common law rules, we also presume (because it is true, see above) that they are "still of force and effect in this State, except where they have

been changed by express statutory enactment or by necessary implication." *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 854 (2) (b) (797 SE2d 814) (2017) (citation and punctuation omitted). What is more, in close cases — where "statutory text can be as reasonably understood to conform to the common law as to depart from it," *Gray*, 310 Ga. at 262 (2) (citation and punctuation omitted) — the presumption is that the legislature meant to stick with the common law rule. Id.[1]

These principles matter here because the concept of nominal damages entered Georgia law as part of the body of English common law that our legislature adopted in the late 1700s. So to understand this distinct kind of damages, we have to ask two main questions:

---

[1] Although our legislature adopted the body of English common law as it existed in 1776, this adoption did not empower Georgia courts to act as common law courts, at least not in all the particulars. In applying the body of common law, Georgia courts necessarily must assess and determine the content and scope of the relevant common law rules and then apply those rules to the case in front of us. But to the extent that common law courts also had license to modify or abrogate a given rule on policy grounds — or to come up with entirely new rules — such authority is not shared by Georgia courts. Our power is merely to "say what the law is," not to decide what it should be. *Cobb County v. Floam*, 319 Ga. 89, 89 (901 SE2d 512) (2024) (citation and punctuation omitted).

First, what were the limits, if any, on how much could be awarded in nominal damages at common law? And second, has the legislature since modified or displaced any such limits? We address these questions in turn.

A. *Nominal Damages at Common Law*

The parties largely agree on what nominal damages looked like at common law, and that picture is relatively clear to us, too. Both English and early American treatises and decisions (including Georgia decisions) describing and applying the common law show the same thing: nominal damages at common law were a trivial sum of money awarded to a litigant who established the invasion of a legal right, but did not prove actual loss in any amount with sufficient certainty. Because the concept of nominal damages at common law is our baseline for determining their nature and scope in Georgia law, it is worth spending a little time unpacking that concept.

1. To understand the nature and role of nominal damages at common law, it helps to start with a couple of bedrock common law rules.

The first one of those rules has to do with the basic relationship between rights and remedies. At least by the 18th century, it was well established that "wherever the common law gives a right or prohibits an injury, it also gives a remedy." William Blackstone, 3 Commentaries on the Laws of England *123 (1768). In some cases, that remedy might be "a specific delivery or restoration of the subject-matter in dispute to the legal owner." Id. at *116. But in many cases, the remedy was instead "a pecuniary satisfaction in damages." Id.

The second rule is about damages. Much like today, to get an award of "substantial damages" (an early term for compensatory damages) as a remedy, a plaintiff at common law had to prove to a sufficient certainty the amount of money that would satisfy that harm. See *Kendrick v. Bartland*, 86 Eng. Rep. 1056, 1056 (2 Mod. 253) (Com. Pl. 1660) ("[The plaintiff] shall have damages for what he can prove."); *Gardiner v. Croasdale*, 97 Eng. Rep. 625, 627 (2 Burr. 904) (KB 1760) ("[I]n an action for damages, the plaintiff is to recover his damages, according to his proof."); *Robey v. Howard*, 171 Eng. Rep. 734, 734 (2 Stark. 555) (KB 1819) ("[I]t was incumbent on

the plaintiff to prove his damages."). See also Joseph A. Joyce & Howard C. Joyce, 1 A Treatise on Damages 66 (1904) (stating that courts require "proof of actual damage in torts generally if more than a nominal award is sought"). If the plaintiff introduced sufficient evidence of actual harm caused by the defendant, it was generally left to juries to determine the amount of substantial damages to award. See, e.g., *Beardmore v. Carrington*, 95 Eng. Rep. 790, 793 (2 Wils. KB 244) (KB 1764) (for new trial for an excessive damages award to be granted, "the damages must be monstrous and enormous indeed, and such as all mankind must be ready to exclaim against, at first blush"); *Leeman v. Allen*, 95 Eng. Rep. 742, 743 (2 Wils. KB 160) (KB 1763) (same). See also J.G. Sutherland, 1 A Treatise on the Law of Damages 771-772 (1882) (explaining how, at common law, the jury generally was charged with assessing the damages sustained by the plaintiff). But the jury had to award that amount based on what amount it believed the plaintiff had proved, and if a plaintiff could not prove the amount of damages that would satisfy that loss with enough certainty, she was not entitled to an award of substantial

11

damages at all. Joyce & Joyce, supra, at 90 (stating that damages "must be proven, unless only a nominal sum is sought"); Theodore Sedgwick, A Treatise on the Measure of Damages 53 (1847) ("[I]f no evidence is given of any particular amount of loss, [the common law] awards what it terms nominal damages.").

Nominal damages live at the intersection of these two rules. If a plaintiff established that her legal rights were violated in a given case, she was generally entitled to a remedy. Blackstone, 3 Commentaries *123. But if the prescribed remedy for the violation in question was damages, and the plaintiff did not prove any amount of actual damages with sufficient certainty, she would not be entitled to an award of substantial damages. Cf. Sedgwick, supra, at 53; Sutherland, supra, at 9 ("If there is no inquiry as to actual damages, or none appear on such inquiry, the legal implication of damage remains."). The common law's answer in those circumstances was nominal damages: a token amount of money that would vindicate the plaintiff's rights without violating the rule that any amount of

12

substantial damages had to be proven. See *Uzuegbunam v. Preczewski*, 592 U.S. 279, 286 (II) (A) (141 SCt 792, 209 LE2d 94) (2021).

This understanding of nominal damages and their role was well-settled by the time the English common law became a part of Georgia law in the late 1700s. As the United States Supreme Court recently explained, by that time, common law courts "reasoned that every legal injury necessarily causes damage, so they awarded nominal damages absent evidence of other damages (such as compensatory, statutory, or punitive damages)." *Uzuegbunam*, 592 U.S. at 286 (II) (A) (emphasis omitted). See also *Entick v. Carrington*, 95 Eng. Rep. 807, 817 (2 Wils. KB 275) (KB 1765) (allowing plaintiff to maintain action for trespass even if the alleged trespasser "does no damage at all"); *Hobson v. Todd*, 100 Eng. Rep. 900, 901 (4 TR 71) (KB 1790) (holding that a plaintiff is "entitled to an action, without proving any specific damage"); *Corp. of Carlisle v. Wilson*, 33 Eng. Rep. 297, 299 (13 Ves. Jun. 276) (Ch. 1807) (where a lawsuit is "merely to try the right, nominal damages [are] taken"); *Cotterill v. Hobby*, 107 Eng. Rep. 1133, 1134 (4 B. & C. 465) (KB 1825) ("[T]he plaintiff is

entitled to nominal damages, although no proof of the value was given.").[2]

In keeping with their role as a remedy for rights violations without sufficient proof of actual damages, nominal damages were universally understood to be a trivial sum: that is, an inconsequential amount of money that was not considered meaningful for its value as money. Authorities from the 1800s and early 1900s noted two general characteristics of nominal damages at common law:

---

[2] For a long time, the rule was that a plaintiff could maintain an action only if she could both establish legal injury (the invasion of a legal right) and prove actual damages. See *Uzuegbunam*, 592 U.S. at 286 (II) (A) (citing *Cable v. Rogers*, 81 Eng. Rep. 259, 259 (3 Bulst. 311) (KB 1625) ("[I]njuria & damnum [injury and damage] are the two grounds for the having [of] all actions, and without these, no action lieth.")). But this rule changed as the 18th century went along. In an important voting-rights case, Lord Holt articulated in a dissenting opinion the idea that "every injury imports a damage" and that a plaintiff could bring an action even if she "does not lose a penny" when her legal right was violated. *Ashby v. White*, 92 Eng. Rep. 126, 129, 137 (2 Ld. Raym. 938) (KB 1703). The House of Lords overturned the majority's contrary holding on appeal, *Ashby v. White*, 91 Eng. Rep. 665 (3 Salk. 17) (HL 1703), and from then on, Lord Holt's principle was followed "in many subsequent cases," *Embrey v. Owen*, 155 Eng. Rep. 579, 585 (6 Ex. 353) (1851), both in the English common law and in early American decisions. See *Parker v. Griswold*, 17 Conn. 288, 304-306 (1845) (explaining that "[t]he principle that every injury legally imports damage, was decisively settled, in the case of *Ashby v. White*," and collecting English and American decisions).

they were not a set amount, but they were in all events a "trivial sum." Joyce & Joyce, supra, at 6 ("Nominal damages are a small and trivial sum awarded for a technical injury due to a violation or invasion of some legal right, and as a consequence of which, some damages must be awarded to determine the right."); Sutherland, supra, at 9 (nominal damages could vary between amounts such as "six cents, a penny, or a farthing"). Indeed, to square their existence with the rule that damages could not be awarded without proof of their amount, some authorities described them in symbolic and abstract terms: for example, a "sum of money that can be spoken of, but has no existence in point of quantity." Id. See also *Michael v. Curtis*, 22 A. 949, 951 (Conn. 1891) ("Small damages and nominal damages, however, do not mean the same thing. Nominal damages mean no damages. They exist only in name, and not in amount."); *Beaumont v. Greathead*, 135 Eng. Rep. 1039, 1041 (2 CB 494) (Com. Pl. 1846) (also describing nominal damages as a sum that "may be spoken of, but that has no existence in point of quantity").

And these descriptions of nominal damages as trivial and symbolic bear out in the cases. When the amount of nominal damages was noted in English decisions from the 18th century and early 19th century, that amount was often just a shilling — that is, 12 pence (or pennies),[3] which was enough to buy a few loaves of bread at the time, see John Kirkland, Three Centuries of Prices of Wheat, Flour and Bread 31-32 (1917) (documenting the average cost for four pounds of bread as six pence in 1776 and a little over a shilling in 1809). See also *Stock v. Harris*, 98 Eng. Rep. 422, 423 (5 Burr. 2709) (KB 1771) (contemplating a nominal damages award of one shilling); *Wilde v. Clarkson*, 101 Eng. Rep. 566, 566 (6 TR 303) (KB 1795) (describing one shilling for nominal damages as an appropriate verdict); *Clendon v. Dinneford*, 172 Eng. Rep. 855, 857 (5 Car. & P. 13) (Exch. Pleas 1831) (jury award of one shilling as nominal damages); *Finch v. Brook*, 132 Eng. Rep. 127, 128 (2 Bing. NC 324) (Com. Pl.

---

[3] "Pence" is the British plural form of "penny." See Historical Denominations of British Money, Univ. of Nottingham, https://www.nottingham.ac.uk/manuscriptsandspecialcollections/researchguidance/weightsandmeasures/money.aspx (last accessed May 29, 2025); *Pence*, The American Heritage Dictionary (2d coll. ed. 1985) ("*n. Chiefly Brit.* A plural of penny").

16

1835) (referring to one shilling as a proper amount for nominal damages). But see *Rodgers v. Nowill*, 136 Eng. Rep. 816, 822 (5 CB 109) (Com. Pl. 1847) (stating that a verdict for 40 shillings was not beyond an award of "mere nominal" damages). Early American cases also reflect varying, yet all quite minimal, amounts. Nominal damages of six cents were common shortly after American independence, and as the 20th century rolled around, an award of a single dollar was a common nominal damages award on this side of the Atlantic. See, e.g., *Norris v. Pilmore*, 1 Yeates 405, 407 (Pa. 1794) (six cents nominal damages verdict); *Starrett v. Douglass*, 2 Yeates 46, 46 (Pa. 1796) (upholding verdict for ten pounds of nominal damages); *Johnston v. Belfour's Executors*, 1 Tenn. 18, 19 (Super. Ct. of L. & Equity of Tenn. 1799) (entering judgment for nominal damages in the amount of one cent); *Hodges v. Suffelt*, 2 Johns. Cas. 406, 406-407 (N.Y. 1801) (six cents nominal damages); *Herrick v. Manly*, 1 Cai. R. 253, 255 (N.Y. 1803) (counsel refers in argument to nominal damages for six cents); *Selfridge v. Lithgow*, 2 Mass. 374, 375 (1807) (en-

17

tering damages of one cent); *Taul v. Moore*, 3 Ky. 90, 97 (1807) (counsel refers in argument to nominal damages being a cent or a penny); *Warner v. Shed*, 10 Johns. 138, 139 (N.Y. 1813) (jury instructed to find only nominal damages and awarded six cents); *Blanchard v. Baker*, 8 Me. 253, 260, 268-269 (1832) (discussing nominal damages verdict for one dollar); *Blackmore v. Gregg*, 10 Watts 222, 223 (Pa. 1840) (when instructed to enter a verdict for nominal damages, jury awarded six cents); *Buckley v. Hampton*, 23 N.C. 318, 318-319, 321-322 (1840) (finding that the plaintiff was entitled to nominal damages and entering judgment for five cents); *Haynes v. Thomas*, 7 Ind. 38, 39, 44 (1855) (remitting $92 nominal damages verdict to one cent); *Irwin v. Askew*, 74 Ga. 581, 584 (1885) (enumeration of errors reflecting that the trial judge instructed the jury that nominal damages were "some small amount, such as a dollar or two, or a few dollars"); *Potter v. Swindle*, 77 Ga. 419, 423-424 (2) (3 SE 94) (1887) (construing a jury instruction that damages could be given for "one cent" as a jury instruction on nominal damages); *Judice v. S. Pac. Co.*, 16 So. 816, 816, 818 (La. 1895) (reversing judgment of $50 as

18

excessive and directing entry of judgment for nominal damages of three dollars); *Morris v. School Dist. No. 86*, 37 SW 569, 569 (Ark. 1896) (remitting to nominal damages of one dollar); *Cent. of Ga. Ry. Co. v. Perkerson*, 112 Ga. 923, 932 (4) (38 SE 365) (1901) (recounting the defendant tendering one dollar to the plaintiff as nominal damages). See also *Carey v. Piphus*, 435 U.S. 247, 267 (III) (98 SCt 1042, 55 LE2d 252) (1978) (holding that a denial of due process would entitle plaintiffs to "nominal damages not to exceed one dollar"); Dan B. Dobbs & Caprice L. Roberts, Law of Remedies: Damages-Equity-Restitution 225 (3d ed. 2018) ("Nominal damages are damages in name only, trivial sums such as six cents or $1."). In short, an award of nominal damages could vary in amount, but that amount was uniformly a trivial sum.

This does not mean that nominal damages were inconsequential. By allowing a plaintiff to maintain an action to establish and vindicate her rights without having to prove damages, nominal damages served as a "form of declaratory relief in a legal system with no general declaratory judgment act." Douglas Laycock & Richard L.

19

Hasen, Modern American Remedies 636 (5th ed. 2019). See also

Dobbs & Roberts, supra, at 226 ("Lawyers might have asserted a

claim for nominal damages to get the issue before the court in the

days before declaratory judgments were recognized.").[4] And, when

awarded, nominal damages served as a basis for a plaintiff to also

recover the costs of an action. See *Beaumont*, 135 Eng. Rep. at 1041

(explaining that an award of nominal damages was "a mere peg on

which to hang costs"). See also, e.g., *Stock*, 98 Eng. Rep. at 423

---

[4] Then, as now, certain "specialized or absolute rights" could be diminished or lost in the future if invasions of those rights were not promptly addressed. William B. Hale, Handbook on the Law of Damages 29 (1896). "For example, a trespass to land or water rights might raise a prospective threat to a property right by creating the foundation for a future claim of adverse possession or prescriptive easement." *Uzuegbunam*, 592 U.S. at 286 (II) (A) (citing *Blanchard*, 8 Me. at 268 ("If an unlawful diversion [of water] is suffered for twenty years, it ripens into a right, which cannot be controverted.")). An award of nominal damages in an action involving those kinds of rights could serve as a declaration of rights that protected against the future threat to those rights. See *Hobson*, 100 Eng. Rep. at 902 ("if A. infringe the right of common of B. it is necessary that B. should have A.'s right ascertained; otherwise his wrongful act would in process of time become evidence of his right"); *Plumleigh v. Dawson*, 6 Ill. 544, 551-552 (1844) ("an injury is likely to ensue from such an invasion of his right, and which is sufficient damage to sustain this action for the recovery of nominal damages at least and *so establish his right*." (emphasis added)); *Webb v. Portland Mfg. Co.*, 29 F. Cas. 506, 507 (C.C. Me. 1838) (Story, J.) (stating that the nominal damages are available "where there is not only a violation of a right of the plaintiff, but the act of the defendant, if continued, may become the foundation, by lapse of time, of an adverse right in the defendant").

(awarding nominal damages of one shilling and costs of 40 shillings); *Lord v. Atwood*, 2 Root 336, 337 (Super. Ct. Conn. 1796) ("[H]e shall recover only nominal damages and his cost."). That said, these declaratory and cost-recovery functions of nominal damages further confirm the settled understanding that those damages were important only for the fact of the award, not the amount: both functions were accomplished with only a trivial sum.

2. This understanding of nominal damages shows up in some of the earliest decisions of this Court. In *Hendrick v. Cook*, a riparian rights case decided just three years after this Court was created in 1845, we applied the bedrock principle that "[w]henever the Common Law gives a *right* or prohibits an *injury*, it also gives a *remedy*, by action." 4 Ga. 241, 261 (1848). See also id. at 260 ("[T]he overflowing of the land of a riparian proprietor, within the banks of the stream, is an *injury* to the *rights* of the party whose property is so overflowed, for which the law will imply damage."). And we applied the normal rule for when nominal damages were appropriate, holding that the plaintiff was "entitled to maintain an action against [the

defendants], and to recover nominal damages for the protection of that right, if no perceptible damage shall be proved on the trial." Id. at 265. See also id. at 264 ("[T]he party injured is entitled to maintain his action for nominal damages, *in vindication of his right*, if no other damages are fit and proper, to remunerate him." (quoting *Webb v. Portland Mfg. Co.*, 29 F. Cas. 506, 508 (C.C. Me. 1838) (Story, J.))). And another decision issued just a few years later, *Jones v. Water Lot Co. of Columbus*, recognized two more of the settled characteristics of nominal damages: that they are for the jury to award, and that they are for a trivial sum. 18 Ga. 539, 541 (1855) (disapproving trial court's offer to defendants after a defense verdict to deny a new trial if the defendants would "pay nominal damages and cost," asking "[w]hat right has the [c]ourt to determine what the nominal damages shall be? Whether one dollar or five dollars?"). See also *Powell v. Augusta & Summerville R. Co.*, 77 Ga. 192, 197, 201 (3 SE 757) (1887) (describing verdicts for $7,500 and around half that amount as not "nominal, or anything like it").

B. *Nominal Damages in Georgia Law*

So, the nominal damages that entered Georgia law as part of the common law of England were awarded when a plaintiff proved a violation of her legal rights but not any amount of actual damages. And an award of nominal damages was a trivial sum of money (usually just a few pennies and, in America, later a dollar) important for the fact of the award, not its amount, and fixed by the jury. There is no suggestion from the common law and the authorities describing and applying it that a larger amount of money would be properly awarded as nominal damages.

As we have already explained, these rules about nominal damages are presumed to be "still of force and effect in this State" unless and until the legislature modifies or displaces them. *Grange Mut. Cas. Co.*, 300 Ga. at 854 (2) (b) (citation and punctuation omitted). Leverette argues briefly that these rules have been modified by statute in a couple of ways, but she primarily contends that the scope of nominal damages has been "expanded" by judicial decisions. We turn to those arguments now.

1. Leverette points first to two statutes that limit the shifting of court costs to the defendant when a jury awards less than specified small amounts of damages to the plaintiff. One of those statutes, OCGA § 9-15-9, limits costs charged to the defendant to the costs that "would have necessarily accrued if the case had been heard before a magistrate" if the jury awards "a sum under $50.00" in an "action ex contractu." The other, OCGA § 9-15-10, allows the plaintiff to recover "no more costs than damages" in actions for slander, assault and "all other personal actions" if the jury awards "less than $10.00" in damages (with an exception for aggravated assault and battery). And, Leverette notes, a statute in a different title of the Code, OCGA § 13-6-6, says that "[i]n every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." Read together, Leverette asserts, these statutes set a "floor" for nominal damages of "*at least* $10" for many claims.

These statutes do not help Leverette here. Even assuming they

24

could be read together to set an effective "floor" for nominal damages,[5] we do not see how they could be reasonably understood to substantially modify or displace the common law rule that nominal damages are only a trivial sum, important for the fact of the award but not meaningful as an amount. At most, OCGA § 9-15-9's $50 threshold for obtaining costs may stretch that limit slightly to the extent that it suggests that nominal damages for that amount are permissible. But that threshold applies only in contract cases, and the $10 threshold of OCGA § 9-15-10 applies to only a subset of

---

[5] This reading is at least unusual. It appears that the two cost-recovery statutes, the language of which entered Georgia law in the late 1700s and early 1800s, are based on English statutes that were meant to keep especially minor (but actionable) suits out of the courts by precluding plaintiffs from getting the full costs even if they won small or nominal damages. See *Saunders v. Parker*, 20 Ga. App. 292, 293-294 (1) (93 SE 103) (1917) (citing *Hardin v. Lumpkin*, 5 Ga. 452, 454-455 (1848)). It makes little sense to understand these statutes to instead ratchet up the minimum amount that may be awarded as nominal damages to ensure that such plaintiffs could still obtain costs in those cases — particularly given that neither statute mentions nominal damages. But see *Conley v. Arnold*, 93 Ga. 823, 826-827 (3) (20 SE 762) (1894) (addressing predecessor to OCGA § 9-15-10 and holding that a verdict for "one dollar and costs" was void because the plaintiff, who established that the defendants were liable for assault, was "entitled to a recovery of at least $10 damages" so he could obtain the costs of the action).

claims, too. Such slight adjustments to the floor for nominal damages in only a subset of cases in which those damages may be awarded (again, a conclusion we only assume here) would not show that our legislature has displaced the common law understanding of nominal damages as a "trivial sum." See *Gray*, 310 Ga. at 262 (2) (common law rules remain in force unless "changed by express statutory enactment or by necessary implication") (citation and punctuation omitted); *Undisclosed LLC v. State*, 302 Ga. 418, 421 (2) (a) (807 SE2d 393) (2017) ("[A]lthough the common law may be amended, such changes must be clear.").

2. Leverette also cites OCGA § 51-12-4, which explains that "[d]amages are given as compensation for injury"; that "generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money"; and finally, that "[i]f an injury is small or the mitigating circumstances are strong, nominal damages only are given." But Leverette only notes that this statute was the basis for part of the jury instruction on nominal

damages in this case. She does not contend that the statute substantially modified or displaced the common law's concept of nominal damages as a general matter. And indeed, the statute does not say what nominal damages *are*, but merely sets out two circumstances in which nominal damages "only," rather than compensatory damages, may be given.[6] Thus, the statute leaves undisturbed the common law's understanding that nominal damages are a trivial sum,

---

[6] This latter statement is a bit of a puzzle. This statute was not enacted by our legislature but instead entered the Georgia Code through the work of the early codifiers in 1863, and its language has remained the same ever since. See Code of 1863 § 2997; Code of 1868 § 3010; Code of 1873 § 3065; Code of 1882 § 3065; Code of 1895 § 3905; Code of 1910 § 4502; Code of 1933 § 105-2001. The early codifiers were supposed to document existing law, including the common law as it was adopted in Georgia, statutes, and even judicial decisions. See Ga. L. 1858 at 95 (charging the codifiers to "prepare for the people of Georgia a Code, which shall as near as practicable, embrace in condensed form, the Laws of Georgia"); Code of 1863 at viii (stating that the codifiers' "leading principle" was to make "no change or alteration in any well defined rule of law"). See also *Sons of Confederate Veterans v. Henry County Bd. of Commissioners*, 315 Ga. 39, 58 (2) (c) (ii) n.14 (880 SE2d 168) (2022) (explaining early codification practices). But the statement that nominal damages are given "[i]f an injury is small or the mitigating circumstances are strong" does not appear to match up with a common law principle or any judicial decision applying the common law at the time. The codifiers' first annotation in support of this language — "[i]f the injury be small or the mitigating circumstances be strong, nominal damages only are given" — appeared in the Code of 1873 § 3065, and it indicates that *Flanders v. Meath*, 27 Ga. 358 (1859), was a basis for this language. But *Flanders* had nothing to do with nominal damages: it was a case about comparative fault, and the Court's opinion never mentions the concept. See id. ("Nominal damages" shows up in the syllabus, but even

27

important for the fact of the award rather than the amount.

3. Leverette mainly contends, however, that Georgia has "embraced an expanded scope of nominal damages" not by statute, but through our decisional law, tracing back to a decision of this Court from 1901, *Sellers v. Mann*, 113 Ga. 643 (39 SE 11) (1901).

At the outset, this argument must be viewed with particular

that says only that "[w]here a person voluntarily throws themselves in the way of a dray, and an injury ensues, the jury may find *almost* nominal damages, notwithstanding they should be of the opinion that the driver of the dray was slightly more in fault than the party hurt." *Flanders*, 27 Ga. at 360 (syllabus) (emphasis added)). So, as best we can tell, the early codifiers may have misread *Flanders* and, as a result, "codified" a rule about nominal damages that did not exist. But that language has persisted in our Code ever since, albeit with only a small handful of citations (and precious little interpretation of it) in our decisional law.

     Because no question about the scope of the circumstances under which nominal damages are awarded is before us — only whether the amount of such damages is limited when they are available — we need not determine the precise scope of these potential circumstances under which nominal damages may be awarded. That said, without better evidence about the meaning of this language, the relevant presumptions that the legislature maintained rather than displaced the relevant common law rules may well apply. See, e.g., *Gray*, 310 Ga. at 262 (2). For this statute, that may mean, for example, that nominal damages are awarded when "damages are small" only if the loss at issue is so small as to be trivial or technical in nature, and when "mitigating circumstances are strong" only if such circumstances are found to cancel out any amount of damages that was otherwise proved. Such an understanding of the statute would be consistent with the common law rule that nominal damages are awarded only when the plaintiff has proved the violation of a legal right but not any amount of actual damages. But we leave any definitive construction of this statute for another day.

skepticism. As we have already discussed, the English common law entered Georgia law not through judicial decisions, but through an act of our legislature. And when our legislature adopted the English common law in the late 1700s, it enacted that body of law into positive law of our State. See OCGA § 1-1-10 (c) (1) (providing that the 1784 adopting act "shall remain of full force and effect"). So, just as this Court lacks the power to disregard a duly enacted state statute, we do not have (and have never had) the power to disregard these common law rules that our legislature enacted into law. See *Seals v. State*, 311 Ga. 739, 748 (3) (b) (860 SE2d 419) (2021) ("We do not have the power to ignore the meaning of words, nor do we have the power to rewrite statutes."). This is why we have made clear that these common law rules remain in force unless and until they are changed by "statutory enactment." *Grange Mut. Cas. Co.*, 300 Ga. at 854 (2) (b) (citation and punctuation omitted). And because only our legislature can modify or displace (by statute or constitutional amendment) the common law rules that it adopted into Georgia law, a reading of a judicial decision that would effectively "abrogate" any

29

common law rules about nominal damages without relying on a statute that did the abrogating must be rejected if any other reasonable reading of the decision is apparent.

But in any event, read properly, *Sellers* did not issue any holding that changed the nature of nominal damages as they came to us from the common law. In *Sellers*, a jury had awarded nominal damages for a breach of contract. 113 Ga. at 643 (2). But the verdict said only that the jury found "for the plaintiffs nominal damages"; the jury did not specify any particular amount of nominal damages a plaintiff should receive. Id. On appeal, we declared that verdict "void for uncertainty." Id. at 644 (2). We explained that a "substantial requisite of a verdict is the element of certainty," and the term "nominal damages" alone "carries with it no suggestion of certainty as to amount" (and we pointed out that law dictionaries from that time described nominal damages only as a "trifling" or "trivial" sum, not as any particular amount of money). Id. at 643 (2). In short, we held in *Sellers* that a verdict for "nominal damages" that did not specify a fixed amount of money is not valid, because that term described a

range of trivial sums, and a damages verdict that is not for an amount certain is not a valid verdict. Id. at 644 (2) (citing *Jackson v. Jackson*, 40 Ga. 150, 150 (1869) (a verdict for "principal, interest, and costs" was uncertain because it did not specify a dollar amount and was therefore void)). Nothing about that holding was inconsistent with the concept of nominal damages that the legislature had pulled in from the common law — either the notion that the amount awarded as nominal damages could vary (because it was the fact of the award, not its amount, that mattered) or the description of nominal damages as a "trivial sum" accurately reflected the common law understanding of nominal damages.

Along the way to this holding, we made the statement that Leverette seizes on. In describing nominal damages as a "trivial sum," we supposed that

> [i]t is apparent that this "trivial sum" might, according to the circumstances of each particular case, vary almost indefinitely. In some cases, a very small amount might constitute the trivial sum contemplated by the term "nominal damages"; in others, a much larger amount might measure down to the same standard of triviality. It would depend largely upon the vastness of the amount involved

31

what sum would be considered trivial.

*Sellers*, 113 Ga. at 644 (2).

Leverette is not wrong that this language could be read to allow an almost unlimited range of amounts to be properly awarded as "nominal damages." But as Leverette acknowledged at oral argument, that inference, although plausibly drawn from *Sellers*'s language, is dicta, not a holding that binds courts going forward. Speaking generally, the holding of a particular judicial decision is limited to the reasoning that was necessary to that decision. See *State v. Wierson*, 321 Ga. 597, 605-606 (2) (b) (ii) (916 SE2d 389) (2025). The relevant decision in *Sellers* was that the jury's verdict for "nominal damages" was void. And the only reasoning necessary to that decision was (1) the general principle that a verdict must be "certain[ ] to a common or reasonable intent," and (2) that the term "nominal damages" "carries with it no suggestion of certainty as to amount" because that term is understood only as a "trivial" or "trifling" sum, not a particular fixed amount of money. *Sellers*, 113 Ga. at 643 (2). The Court's further musings on what sums might be considered

32

"trivial" and its suggestion that "[i]t would depend largely upon the vastness of the amount involved" — a sliding-scale concept of nominal damages found nowhere in the common law and for which the Court cited exactly nothing in support — was not necessary to deciding the narrow question before the Court about the certainty of the verdict. Id. at 644 (2).

And if any question lingered as to whether *Sellers*'s sliding-scale concept of unlimited nominal damages had binding force, this Court's subsequent decisions would seem to put that to rest. In a string of decisions right after *Sellers*, rather than reciting and applying *Sellers*'s language about judging the "triviality" of nominal damages against the "vastness of the amount involved," we simply struck damages awards of significant amounts when only nominal damages would have been proper. See, e.g., *Russell v. Mohr-Weil Lumber Co.*, 115 Ga. 35, 38 (5) (41 SE 275) (1902) ($2,500); *Cent. of Ga. Ry. Co. v. Wood*, 118 Ga. 172, 173 (44 SE 1001) (1901) ($249.50); *Milledgeville Water Co. v. Fowler*, 129 Ga. 111, 114 (58 SE 643) (1907) ($150). None of those decisions mentioned *Sellers* at all. In

33

short, *Sellers* did not change the concept of nominal damages that we adopted from the English common law.

Although the novel, sliding-scale concept of nominal damages was dicta in *Sellers*, the Court of Appeals would go on to embrace it. The Court of Appeals was established just a few years after *Sellers* was issued, see Ga. L. 1906 at 24, so cases involving nominal damages were soon appealed to that court. And in due course, the Court of Appeals upheld a significantly larger award of nominal damages, citing *Sellers*'s dicta about nominal damages being "purely relative." *W. Union Tel. Co. v. Glenn*, 8 Ga. App. 168, 170 (68 SE 881) (1910) (upholding $250 award of "nominal damages"). And later panels, bound by *Western Union*'s holding, followed it to its (not so) logical conclusion, to the point where, decades later, the Court of Appeals was affirming awards of "nominal damages" that ballooned up to hundreds of thousands of dollars. See, e.g., *Atkinson v. Mercer*, 11 Ga. App. 462, 462 (75 SE 676) (1912) ($150); *Atl. Coast Line R.R. Co. v. Stephens*, 14 Ga. App. 173, 179 (80 SE 516) (1914) ($150); *Duckworth v. Collier*, 164 Ga. App. 139, 140-141 (3) (296 SE2d 640) (1982)

34

($1,500); *First Fed. Sav. & Loan Ass'n of Atlanta v. White*, 168 Ga. App. 516, 516-517 (3) (309 SE2d 858) (1983) ($3,000); *Miller & Meier & Assocs. v. Diedrich*, 174 Ga. App. 249, 253-256 (3) (329 SE2d 918) (1985) ($130,000); *Wright v. Wilcox*, 262 Ga. App. 659, 662-663 (2) (586 SE2d 364) (2003) ($22,000); *MTW Inv. Co. v. Alcovy Props.*, 273 Ga. App. 830 (616 SE2d 166) (2005) ($625,000). The Court of Appeals in this case then applied that line of its own precedent to affirm the jury's $1 million award. See *Leverette*, 371 Ga. App. at 552 (1).

For all of the reasons we have discussed at length above, these decisions of the Court of Appeals were wrong. The concept of nominal damages that entered Georgia law from the English common law included a clear limit on nominal damages: they must be for a "trivial sum," meaning an amount that is important only for the fact of the award but not meaningful as an amount of money. Sedgwick, supra, at 53; *Beaumont*, 135 Eng. Rep. at 1041 (describing nominal damages as a sum that "may be spoken of, but that has no existence in point of quantity"). That limit was central to the role of nominal damages as an award that would remedy a violation of legal rights

35

without violating the rule that a plaintiff may recover substantial damages only with sufficient proof of their amount. Joyce & Joyce, supra, at 66; *Gardiner*, 97 Eng. Rep. at 627 ("[I]n an action for damages, the plaintiff is to recover his damages, according to his proof."). These common law rules, now part of Georgia statutory law, remain in force unless and until the legislature modifies or displaces them. So, to the extent that these decisions of the Court of Appeals upheld non-trivial awards of nominal damages under the sliding-scale, "no maximum" reasoning set out in this line of decisions, they were wrong and must be overruled.[7]

---

[7] That reasoning appears in *Leverette*, 371 Ga. App. 543; *MTW Inv. Co.*, 273 Ga. App. 830; *Wright*, 262 Ga. App. 659; *Miller & Meier & Assocs.*, 174 Ga. App. 249; *First Fed. Sav. & Loan Ass'n of Atlanta*, 168 Ga. App. 516; *Duckworth*, 164 Ga. App. 139; *Atl. Coast Line R.R. Co.*, 14 Ga. App. 173; *Atkinson*, 11 Ga. App. 462; and *W. Union Tel. Co.*, 8 Ga. App. 168.

In *Ponce de Leon Condominiums v. DiGirolamo*, 238 Ga. 188, 190 (3) (232 SE2d 62) (1977), this Court cited a handful of these Court of Appeals decisions in affirming an award of $1,000 in "nominal damages." But unlike the Court of Appeals decisions, *Ponce de Leon Condominiums* did not adopt a "no-maximum" rule or a sliding-scale approach for nominal damages. Instead, the Court explained that the plaintiff had introduced evidence of *actual* damages by showing that the defendants' development project caused significant drainage problems on the plaintiff's land, and the jury's award was not excessive "in conjunction with the evidence of actual damage." Id. That reasoning, focused on significant evidence of actual damages, might be understood as recognizing that the $1,000 award should not be disturbed because the evidence supported

*

Where does all of this leave us? Mostly, we are still where we began: the concept of nominal damages in Georgia law largely mirrors nominal damages as they were understood at common law.

First, nominal damages at common law were a "trivial sum" awarded to a plaintiff who established the invasion of a legal right but did not prove entitlement to actual damages, in any amount, with enough certainty. All of that is true in Georgia law today.

Second, the "trivial sum" awarded in these circumstances is fixed by the jury in each case. See OCGA § 51-12-12 (a) ("The question of damages is ordinarily one for the jury."); Sutherland, supra, at 771-772 (explaining how, at common law, the jury generally was charged with assessing the damages sustained by the plaintiff).

Third, the amount a jury awards in nominal damages will not

_____

an award of compensatory damages. On the other hand, we did not correct the use of the term "nominal damages" to describe the $1,000 award. But even assuming *Ponce de Leon Condominiums* in fact held that $1,000 is a permissible award of nominal damages — a holding that probably would be wrong as an original matter — we need not reconsider it in this case. Even if $1,000 were the high-water mark for what a rational jury might consider a "trivial sum," that sum is several orders of magnitude smaller than the $1 million award at issue in this case.

be disturbed as long as the amount remains one that a rational juror could conclude is a "trivial sum": important for the fact of the award but not meaningful for its amount. At English common law, that amount was most often a shilling, and on this side of the Atlantic, a dollar is typical. E.g., *Stock*, 98 Eng. Rep. at 423; *Carey*, 435 U.S. at 267 (III) (holding that a denial of due process would entitle plaintiffs to "nominal damages not to exceed one dollar"). Our decisions have not identified a precise upper bound for nominal damages beyond their description as a trivial sum, although it is fair to conclude that the awards we struck in cases where nominal damages were warranted were not "trivial sums" at the time of those decisions. See, e.g., *Pugh v. McCarty*, 40 Ga. 444, 448 (2) (1869) (striking $2,500 verdict when only nominal damages should have been given); *Goins v. W. R.R. Co. of Alabama*, 59 Ga. 426, 427 (1877) ($1,000); *Russell*, 115 Ga. at 38 (5) ($2,500); *Cent. Ga. Ry. Co.*, 118 Ga. at 173 ($249.50).[8]

---

[8] As we pointed out earlier, we also upheld an award of $1,000 in nominal

III. *This Case*

With these points of law settled, we can now address this case.

First things first: A million dollars is not a permissible award of nominal damages. As we just concluded, nominal damages are a trivial sum, important for the fact of the award but not meaningful in amount. No rational juror could conclude that $1 million meets that description, and we have rejected awards of nominal damages that were far lower than that amount before. Cf. *Rockdale Hosp., LLC v. Evans*, 306 Ga. 847, 851-852 (2) (b) (834 SE2d 77) (2019) (stating that appellate courts may vacate jury verdicts that are "so excessive or inadequate as to be irrational" — verdicts that shock the "judicial conscience"). The amounts that we have concluded were excessive in cases where only nominal damages were proper do not come close to $1 million, even adjusted for inflation. See *Pugh*, 40

---

damages in *Ponce de Leon Condominiums*, 238 Ga. at 190 (3). But as we discussed, it is not clear to us that *Ponce de Leon Condominiums* stands for the proposition that $1,000 was a permissible amount to be awarded as nominal damages at the time of that decision, particularly since that decision failed to address, much less grapple with, the settled understanding that nominal damages are a "trivial sum" or whether $1,000 could rationally be viewed as trivial.

Ga. at 448 (2) ($2,500 — around $59,000 today); *Goins*, 59 Ga. at 427 ($1,000 — $29,500 today); *Russell*, 115 Ga. at 38 (5) ($2,500 — around $90,000 today); *Cent. of Ga. Ry. Co.*, 118 Ga. at 173 ($249.50 — around $8,700 today).[9] So the Court of Appeals's contrary decision must be vacated.

But this conclusion does not resolve whether the jury's verdict in this case must be vacated — or if so, what comes next — for two case-specific reasons.

First, Leverette contends that even if the jury's award was improper, it should not be disturbed because any such error was invited by Walmart, who asked for a jury instruction and separate line on

---

[9] Historical money values can be calculated using the Consumer Price Index. See Consumer Price Index, 1800-, Fed. Res. Bank of Minneapolis, https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator/consumer-price-index-1800- (last accessed June 2, 2025).

This is not to say that the original or the inflation-adjusted amounts from these cases are necessarily conclusive data points for deciding whether a given award of nominal damages is permissible. For example, *Russell* deemed excessive a verdict of what would be the equivalent of $90,000 in today's dollars. That does not mean that a verdict of $50,000 or even $1,500 in nominal damages today *would* be permissible. The question is instead whether the jury in the case today could rationally have concluded that the amount awarded in nominal damages was a trivial sum, keeping in mind the amounts of money that were traditionally awarded as nominal damages.

the verdict form for nominal damages without any instruction properly defining or limiting those damages, suggested $3 million as an improper amount of nominal damages in closing argument, and now challenges the jury's award because it falls outside of the proper understanding of nominal damages. We did not grant review of this case to resolve that case-specific argument and decline to do so here, but any such arguments about invited error would properly be considered by the courts below on remand.

Second, even if the jury's verdict is not preserved on the basis that it was invited error, we leave it to the courts below (likely the trial court in the first instance) to determine the appropriate remedy given the particular combination of jury instructions (which did not give the jury any information about the nature of nominal damages), the special verdict form, and the overall jury verdict in this case. That question does not appear to have a straightforward answer, the parties disagree about what remedy would be appropriate, and we

lack the briefing necessary to give it the careful consideration it deserves.[10] So this case-specific question is left for remand as well.

*Judgment vacated and case remanded with direction. Peterson, C. J., Warren, P. J., and Bethel, Ellington, McMillian, LaGrua, and Colvin, JJ., concur.*

---

[10] Walmart contends in its brief to this Court that a verdict for $0 should be entered for Leverette, but if any retrial is had, the new trial should be limited to the issue of nominal damages. Leverette counters that if the jury's award is invalidated, the proper remedy is a new trial on all damages. But the briefing is thin (because we did not ask the parties to brief this case-specific question), and there are plausible arguments in support of different approaches.

Decided June 24, 2025.

Certiorari to the Court of Appeals of Georgia — 371 Ga. App. 543.

*McLain & Merritt, Robert B. Hill; GrayRobinson, P.A., Jack R. Reiter, Sydney M. Feldman*, for appellant.

*Nick Schnyder Law Firm, W. Drew Gilliland; Ashby Thelen Lowry, Maxwell K. Thelen, Seth A. Lowry*, for appellee.

*Philips Branch Hodges & Worstell, Jason B. Branch; The Brosnahan Law Firm, Bret S. Moore; Beasley Allen Crow Methvin Portis & Miles, Alyssa B. Baskam*, amici curiae.